(102 App. Div. 103.)

PEOPLE ex rel. APPEL v. ZIMMERMAN, Police Captain.

(Supreme Court, Appellate Division, Fourth Department. March 1, 1905.)

1. CONSTITUTIONAL LAW—POLICE POWER—TRADING STAMP LEGISLATION.

Laws 1904, p. 1651, c. 657, prohibiting dealing in trading stamps or coupon tickets unless the stamp or device shall have legibly printed or written upon the face thereof the redeemable value thereof in money, requiring the ticket or stamp to be redeemed in goods or money at the option of the holder, subjecting the person charged with its redemption to liability for its face value, and making the violation of the act a misdemeanor, but excepting from its provisions tickets or coupons issued by a merchant or manufacturer in his own name, and redeemable by him, is not a legitimate exercise of the police power of the state, but is an unwarranted interference with a legitimate business.

2. SAME—EQUAL PROTECTION OF LAWS—ARBITRARY DISCRIMINATIONS.

Laws 1904, p. 1651, c. 657, restricting dealing in trading stamps, subdivision 5, p. 1652, of which excludes from its provisions tickets or coupons issued by a merchant or manufacturer in his own name, and redeemable by him, is arbitrarily discriminative in favor of the merchant or manufacturer who issues and redeems his own stamps or coupons, and is therefore invalid.

Appeal from Special Term, Monroe County.

Habeas corpus proceedings by the people, on the relation of Edward Appel, against Michael J. Zimmerman, as captain of police

of the city of Rochester. From an order discharging relator from custody, defendant appeals. Affirmed.

The relator was arrested by the defendant, a captain of police, of the city of Rochester, August 8, 1904, charged with having committed a misdemeanor in selling smoking tobacco in a package containing a coupon ticket or trading stamp, in violation of chapter 657, p. 1651, Laws 1904 (section 384q of Penal Code). A writ of habeas corpus was issued before any trial of the charge was had, and a return to the writ was made, and upon a hearing at Special Term the relator was discharged on the ground that the act mentioned is unconstitutional.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Robert Averill, Asst. Dist. Atty., for appellant.
Junius Parker, Albert H. Harris, and Horace G. Pierce, for respondent.

SPRING, J. The relator is a retail dealer of tobacco in the city of Rochester. On the 26th day of May, 1904, and before the act complained of became operative, he purchased of H. P. Brewster, a wholesale dealer of tobacco in said city, the tobacco which he sold to one Nolan on July 6, 1904, resulting in his arrest. The tobacco was shipped to said Brewster by the American Tobacco Company, a foreign corporation engaged in the manufacture of tobacco. It was put up in a cloth bag containing 1⅔ ounces. The package was closed at the top with a string, and pasted over it was an internal revenue stamp, further fastened by a label girding the entire package. The bag contained a coupon ticket entitling the holder, upon the presentation of a certain number of tickets to the Floradora Tag Company, of St. Louis, Mo., to a choice of presents enumerated in a catalogue furnished to the holder upon application. The ticket is not redeemable in cash, and there is no guaranty of its redemption by the tobacco company or by the local dealers. The statute mentioned defines the transaction as a crime, and its constitutionality is assailed by the relator.

The method of inducing trade by giving stamps redeemable in merchandise to the purchasers has become very extensive, and the device has developed in a variety of ways. The practice has been quite vigorously assailed, especially by those who have suffered from it in trade competition, and the Legislature, possibly under the spur of this opposition, has endeavored, in the guise of regulating the business, to curtail it so effectively as to be equivalent to its prohibition. It is not a novel expedient for the Legislature to interfere with trade. The pretext for this kind of legislation is that the public health and public morals will be conserved thereby. If the pretext is founded in reason, the law will be upheld, for the preservation of the public health calls into requisition the police power of the state, and, if fairly within the elastic scope of that power, the courts are earnest to join with the Legislature to give validity to any enactment which promotes the welfare of the pub-

lic. If, however, the legislation is for the preference of one class of tradesmen above another, or is designed to destroy or hamper one kind of business because its successful prosecution has resulted to the detriment of others in competition, the attempt has invariably been opposed by the courts on the ground that the legislation is in contravention of the fundamental law. People v. Gillson, 109 N. Y. 389–398, 17 N. E. 343, 4 Am. St. Rep. 465; People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34; Slaughterhouse Cases, 16 Wall. 36–106, 21 L. Ed. 394; City of Buffalo v. Collins Baking Co., 39 App. Div. 432, 57 N. Y. Supp. 347.

In Matter of Application of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636, the court reviewed and condemned, with much clearness and elaboration, legislation of this character. An act had been passed (chapter 272, p. 335, Laws 1884) "to improve the public health by prohibiting the manufacture of cigars," etc., "in tenement houses." The act was justified on the grounds that it did not deprive any person of his property, that it was a regulation of the business, and that it was within the compass of the police power. The court, however, held that the enforcement of the law would be an infringement upon the personal and property rights of the individual. In commenting upon the limitations of the police power, and after reviewing the authorities, the court say at page 110 of 98 N. Y. (50 Am. Rep. 636):

"These citations are sufficient to show that the police power is not without limitations, and that in its exercise the Legislature must respect the great fundamental rights guarantied by the Constitution. If this were otherwise, the power of the Legislature would be practically without limitation. In the assumed exercise of the police power in the interest of the health, the welfare, or the safety of the public, every right of the citizen might be invaded and every constitutional barrier swept away."

In People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34, and in Schollenberger v. Pa., 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49, there was up for consideration in each instance a statute absolutely prohibiting the manufacture or the sale of oleomargarine. The article was then in extensive use, was a healthful, palatable product, and put on the market on its merits, and without disguising its composition. The statute considered in each case was held to be an unlawful interference with the right of a person to engage in a legitimate industrial pursuit or trade. A statute (Laws 1897, pp. 498, 499, c. 415, §§ 180–184) passed with a view to regulate horseshoeing, and which was endeavored to be sustained as a proper exercise of the police power, was held invalid. People v. Beattie, 96 App. Div. 383, 89 N. Y. Supp. 193. So an ordinance of the city of Buffalo fixing absolutely the weight of each loaf of bread baked for sale, and prescribing a penalty for its violation, was held to be an unreasonable exercise of the police power, and an unlawful interference with the rights of individuals engaged in selling loaves of a different weight than that fixed by the ordinance. City of Buffalo v. Collins Baking Company, 39 App. Div. 432, 57 N. Y. Supp. 347.

We have referred to these authorities for the purpose of emphasizing the proposition that the constitutional provisions insuring

a person the largest liberty in his business, if only it be lawful and not violative of the public welfare, are still maintained in their integrity.

By chapter 691, p. 898, Laws 1887, a section (335a) was added to the Penal Code, prohibiting the selling of any article of food upon the advertisement or inducement that anything was to be delivered, connected with the transaction, as a gift or reward to the purchaser, and a violation of the act was made a misdemeanor. The defendant was convicted of a violation of this statute, in delivering with two pounds of coffee two checks entitling the purchaser to a choice of certain articles on a counter and in his full view, and he received a cup and saucer connected with his purchase. The judgment of conviction was reversed by the Court of Appeals. People v. Gillson, supra. The court held that the enactment traversed the clause of the Constitution which prevented the deprivation of a person's "life, liberty, or property without due process of law." The court say at page 398 of 109 N. Y., page 345 of 17 N. E. (4 Am. St. Rep. 465):

"The following propositions are firmly established and recognized: A person living under our Constitution has the right to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see fit. The term 'liberty,' as used in the Constitution, is not dwarfed into mere freedom from physical restraint of the person of the citizen, as if by incarceration, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. Liberty, in its broad sense, as understood in this country, means the right not only of freedom from servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation."

An endeavor was made in that case to uphold the statute by an appeal to the police power of the state, but, after a very careful review of the authorities and of the power on principle, the court held that the act could not be sustained as a police regulation. In commenting upon the suggestion that the act merely regulated trade, the court used this language at page 405 of 109 N. Y., page 345 of 17 N. E. (4 Am. St. Rep. 465):

"Equally unfounded is the assumption that the law is valid as a law regulating trade, and for the prevention of fraud and deception. It has no tendency to prevent either, and its regulation of trade is a mere arbitrary, unreasonable, and illegal interference with the liberty of the citizen in his pursuit of a livelihood by engaging in a perfectly valid business, conducted in a perfectly proper manner."

We therefore start out with the proposition that the defendant, in offering and giving a prize as a gratuity to induce the purchase of tobacco, was engaging in a lawful business, and any act which hampered or interfered with this transaction was repugnant to the clauses of the Constitutions of the United States and of our own state which guarantied him liberty of person and property in carrying on a lawful vocation.

By chapter 768, p. 1633, Laws 1900, another section was added to the Penal Code (section 384p). This statute prohibited issuing trading stamps to any person, in trade or business, with the promise that any valuable thing will be given to the person tendering the stamps, un-

less he receives the value thereof from such person, and also prohibited the distribution of trading stamps in consideration of any article or thing purchased. This statute, in effect, was expected to destroy the trading stamp business, for the things forbidden were part and parcel of the enterprise. Inasmuch as the right of a person in trade to give something additional to a purchaser, with the article sold, as an inducement to the purchase, had been held in the Gillson Case to be legitimate and protected by the Constitution, it would seem as if the section referred to was plainly within the condemnation of the spirit of that decision. The statute came up for review in People ex rel. Madden v. Dycker, 72 App. Div. 308, 76 N. Y. Supp. 111, and the court, following the case mentioned, and kindred authorities in other states, held that the act was invalid. Thereupon the present statute (chapter 657, p. 1651, Laws 1904) was added to the penal Code (section 384q), leaving the other sections unrepealed. This statute, in brief, prohibits dealing in trading stamps or coupon tickets unless the stamp or device "shall have legibly printed or written upon the face thereof the redeemable value thereof" in money. The second provision requires that the ticket or stamp, upon presentation, be redeemed in goods or money, at the option of the holder, if presented "in a number or quantity aggregating the money value of not less than five cents in each lot," and the person charged with redemption as aforesaid shall upon failure be liable for the face value thereof (subdivision 3), and a violation of the provisions of the act is also a misdemeanor (subdivision 4). We have, consequently, if this new effort is to be upheld, a perfectly lawful business emasculated, for the pivot on which it turns is the promise to deliver some article of merchandise to the purchaser as an inducement to the purchase; and, if money is to be the gratuity, then that ends the business, for that would mean that the seller reduces the purchase price in each instance by a definite sum. The rock on which the system is built is the redemption of the stamps in merchandise. The enormous quantities of this merchandise disposed of enables the company of redemption, acting for a multitude of business concerns, to purchase very close to actual cost, so that each person or firm in trade is not called upon to contribute the full sum with which it would be chargeable upon a cash redemption. While, therefore, the present statute is sought to be vindicated as a mere regulation of the traffic, it is apparent that, if the ticket must be redeemed in money, the business must cease, and the statute is consequently prohibitory.

It is urged that the statute is within the range of the police power, on the ground that it is in support of good morals. That same argument was considered in the Gillson Case. It is no more against good morals to issue a ticket redeemable in merchandise than to redeem in money or merchandise at the election of the holder. The pith of each transaction is a gift to the purchaser, and, as an inducement, to secure trade, and generally for cash, for in most instances payment for the goods is a prerequisite to the delivery of the trading stamp or coupon ticket. It may be that the trading stamp business tends to demoralize trade. It may be that people in moderate or straitened circumstances are prone to purchase beyond their means by the incitement of a gift after a stated amount has been expended. The farmer who attends

an auction sale is often disposed to buy what he does not need, led along by the competition in the bidding, or by the fact that time is allowed on the purchase. If a grocer of the city of Rochester should reduce the price of flour or coffee below cost, it might tend to the demoralization of the grocery trade in that city, and would certainly be exasperating to his competitors. These slight derelictions may be imprudent, but they are not the subject of legislative control. It is fundamental that the widest scope is accorded to the individual in the prosecution of his business, if only that business be lawful and be conducted in a lawful manner.

But the moral question is eliminated by subdivision 5 of the act, which excludes from its provisions tickets or coupons issued by a merchant or manufacturer in his own name, and redeemable by him. It cannot be so reprehensible as to be a crime to issue a coupon ticket redeemable by a third person, but be without sin to issue one redeemable by the seller of the goods. A similar statute was considered by the Supreme Court of Rhode Island (State v. Dalton, 46 Atl. 234, 48 L. R. A. 775), and held to be an invasion of the liberty of the individual, and not sustainable under the police power.

The present act is sought to be distinguished from those condemned in some of the cases referred to because in those cases the merchandise to be given away upon the presentation of the ticket was in the plain view of the purchaser. The distinction is more fanciful than genuine, for there can be little difference in selecting from sight or from a catalogue. In any event, the purchaser, when he buys, knows that he will get the names of the prizes or gift articles from the catalogue, and of a company not readily accessible to him. There is no deception. The prizes given by the publishers of the Youth's Companion or the Ladies' Home Journal or other publications as an inducement to subscribe for the periodicals are not in full view, but are described in pamphlets or in the publication itself. The transaction is not unlawful on that account, for the subscriber is not deceived. He buys, knowing the place where he is to get his prize, and depends upon the printed description for his knowledge of it. There is no suggestion of a fraudulent purpose in the present scheme, unless accompanying the delivery of the goods purchased with the promise to give something additional is fraudulent. There is no pretense that the coupon ticket is not redeemable in accordance with the promise it contains. In a nutshell, therefore, the present statute is only designed to debar the giving of anything of value by a tradesman with the goods he sells, the gift being delivered by and pursuant to an arrangement with a separate company; and that kind of a transaction, honestly carried out, cannot be prevented by the Legislature.

There is another infirmity in the statute, which we apprehend renders it invalid. By subdivision 5, as already noted, the business of dealing in trading stamps is reserved for the merchant or manufacturer. This creates a preferential class. The vice, it seems, is not in alluring one to buy by promise of a gift, but in permitting the promise to be fulfilled by another than the seller. It is a narrow ledge for the distinction to rest upon, when in one instance the transaction is subject to legislative control to the extent of confiscation, while in the other it goes

without let or hindrance.    If the seller, by arrangement with a responsible company, secures the performance of the agreement, and the arrangement is satisfactory to the buyer, it would seem that such a plan ought not to be made a crime, while redemption by the merchant is deemed an honest transaction.    The statute is not founded on the moral plane pretended, but belongs to that class of legislation designed to drive out of business a successful competitor.    The transaction aimed at does not come within the compass of those authorities which have justly gone far in restricting the adulteration of food products.    People v. Girard, 145 N. Y. 105, 39 N. E. 823, 45 Am. St. Rep. 595; People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483; People v. Cipperly, 101 N. Y. 634, 4 N. E. 107; and People v. Niagara Fruit Co., 75 App. Div. 11, 77 N. Y. Supp. 805, affirmed on opinion below 173 N. Y. 629, 66 N. E. 1114.    The adulteration of foods is deleterious to health, and is a deception and a fraud on the purchaser.    A nutritious food, however, like oleomargarine, sold for what it really is, cannot, as already suggested, be tabooed by the Legislature simply because it resembles butter, and its sale may tend to lessen the selling price of the latter article.

One or two propositions may be regarded as settled by authority: The police power, while sufficiently comprehensive to meet most every exigency involving the public health, safety, or morals, is subsidiary to the Constitution.    When the purpose is plainly to subserve the public in some of the respects named, the legislative enactment will be sustained, for legislative control is supreme, providing it keeps within the limitations of the Constitution.    But it is also a landmark of our Constitution that the individual is permitted to engage in any lawful pursuit in a legitimate and honorable manner, and he is above interference, even by the Legislature, if he keep within the limits suggested.

We have very grave doubts of the right to convict the defendant in this case, in any event.    He purchased the tobacco in good faith, and had it in his possession, long before the statute upon which the arrest is founded became operative.    When the law first came in force, he consequently had property on hand which he was rightfully entitled to sell.    In order to extract the coupon from the bag in which it was contained, it would be necessary to tear off the revenue stamp and the label.    The effect of the statute, therefore, if valid, was substantially to confiscate or destroy all the property he had on hand in these bags, and which contained coupon tickets not placed there by him, but by the manufacturer.    People ex rel. McPike v. Van De Carr, 178 N. Y. 425, 70 N. E. 965, 66 L. R. A. 189.    However, we prefer to place our decision upon the invalidity of the act itself.

The order should be affirmed.    All concur.