## STATE v. HOLTGREVE.

No. 3638.   Decided September 7, 1921.   (200 Pac. 894.)

1. CRIMINAL LAW—REVIEW OF DECISION OF DISTRICT COURT ON APPEAL FROM JUSTICE'S COURT. The Supreme Court on appeal from a judgment of the district court in a criminal case which originated in justice's court may not review errors, except those which relate to or assail the validity of the act under which defendant was convicted.

2. STATUTES—MUST OPERATE UNIFORMLY. All laws shall operate uniformly wherever uniform laws can be enacted.

3. STATUTES—STATUTE REQUIRING TAX ON TRADING STAMPS INVALID AS ATTEMPTING UNAUTHORIZED CLASSIFICATION BECAUSE NOT APPLYING TO MERCHANTS ISSUING THEIR OWN STAMPS. The

Trading Stamp Act, levying a tax on trading stamps of merchants obtaining them from third persons, but not on stamps of merchants issuing their own stamps, is discriminatory in attempting an unauthorized classification.[1]

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

William C. Holtgreve was convicted before a justice of' a violation of the Trading Stamp Act. Conviction affirmed in district court, and he appeals.

REVERSED AND REMANDED, with directions to dismiss.

*Frank T. Wolcott,* of New York City, and *Mathonihah Thomas* and *King, Straup, Nibley &, Leatherwood,* all of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty. Gen., for the State.

FRICK, J.

The defendant, William C. Holtgreve, hereinafter called appellant, was complained of and convicted for having violated the provisions of what is usually called the Trading Stamp Act by reason of transacting the business prohibited by that act without paying the taxes thereby required to be paid.

The act has been carried forward into Comp. Laws Utah 1917, and constitutes sections 6165 to 6174, inclusive, of that compilation. We shall refer only to such sections as are deemed material here.

Section 6165 imposes a tax of—

"50 cents on each and every sale, transfer, issue or delivery of one thousand trading stamps, or fraction thereof, made to any person, firm or corporation with the intent or purpose that the same shall be by him, them, or it sold, transferred, issued, or delivered to

---

[1] *Board of Education* v. *Hunter,* 48 Utah, 373, 159 Pac. 1019.

another upon, or in connection with, or as a result of, the sale of any goods, wares, merchandise, or other commodity or thing of value."

Then follows a provision with respect to how the payment of the taxes shall be made and evidenced.

Section 6166 reads as follows: .

"There is also hereby imposed and levied and there shall immediately accrue and be collected a tax, as herein provided, of 50 cents on each and every sale, transfer, issue, or delivery, of one thousand trading stamps, or fraction thereof, made to any person, firm, or corporation upon, in connection with, or as a result of, the sale of any goods, wares, merchandise, or any other commodity or thing of value. The payment of such tax shall be evidenced by an adhesive stamp or stamps affixed as required by section 6165; provided, that when a tax has been paid upon the sale, transfer, issue, or delivery of any such trading stamps at the time the same were purchased or received by the person selling, transferring, issuing, or delivering the same to another upon, in connection with, or as a result of, a sale of goods, wares, merchandise, or any other commodity or thing of value, and such payment is evidenced by stamps affixed as required by section 6165, then no tax shall be levied upon the sale, transfer, issue, or delivery of such trading stamps made upon, in connection with, or as a result of, a sale of goods, wares, merchandise, or other commodity or thing of value; it being the intent to levy a tax upon only one transfer of the same trading stamps."

Section 6174 defines the character of the stamps or devices which it is intended to tax and reads as follows:

"For the purpose of this chapter, a . trading stamp shall · be deemed to be any stamp, voucher, scrip, coupon, ticket, or other device sold, given, transferred, issued, or delivered to any person, firm, or corporation with the intent or purpose that the same shall be sold, given, transferred, issued, or delivered to any other person, firm, or corporation upon, in connection with, or as a result of, the sale or exchange of any goods, wares, merchandise, or· other commodity or thing of value, which shall entitle the person, firm, or corporation receiving the same, upon presentation or surrender, to receive any money or any goods, wares, merchandise, or other commodity or thing of value, free of charge or at less than the sale price thereof."

There are other sections containing provisions denouncing the failure to pay the tax provided for in the act or to com-

ply with its provisions as a misdemeanor and punishable as such.

In a complaint duly filed in the justice's court of Salt Lake City the appellant was regularly charged with having violated the provisions of the foregoing sections. He demurred to the complaint generally, and, for the reasons stated in the demurrer, he also assailed the act as being unconstitutional, and therefore void. The demurrer was overruled, and appellant pleaded not guilty. He was, however, convicted and sentenced to pay a fine as provided in the act. He appealed to the district court of Salt Lake County, where the demurrer, as before stated was again interposed, and was there also overruled. The appellant then entered a plea of not guilty in that court, whereupon the state and appellant entered into a stipulation of facts, the substance of which is hereinafter set forth, upon which the case was submitted to the district court, a jury trial having been duly waived. The district court found appellant guilty and entered judgment imposing a fine, from which this appeal is prosecuted.

The stipulation of facts comprises 17 pages of the printed abstract, and therefore is too long to be incorporated into this opinion. We shall, however, attempt to state all the material facts in condensed form.

It is stipulated:

That the Sperry & Hutchinson Company, hereinafter called company, is a corporation existing under the laws of the state of New Jersey, and was at all times mentioned in the stipulation, and now is, "engaged in various states of the United States, including the state of Utah, and in the county of Salt Lake, said state, in the business of furnishing to merchants under written contract the use of its co-operative system of encouraging and increasing cash trade at retail and of giving a discount on small, as well as of large, cash purchases made by customers at retail"; that the appellant at all times stated in the complaint was in the employ of said company in the state of Utah, and as such employé had charge of its business in this state and transacted its business on its behalf; that on February 7, 1916, the company, through appellant as its agent, entered into a written contract with one John Britton, Jr., at Midvale, Salt Lake county, Utah (a copy of which contract is made a part of the stipulation); that said Britton, on the 29th day of October, 1917 (the date named in the complaint filed against

appellant), was engaged in and was doing a general merchandise business at retail at Midvale aforesaid, and there sold at retail groceries, dry goods, household utensils, and other goods, wares, and merchandise; that in pursuance of said written contract the appellant, for and on behalf of said company, on said 29th day of October, at said Midvale, "issued, transferred, and delivered, to said John Britton, Jr., the 5,000 S. & H. green trading stamps mentioned and referred to in the said complaint, with the intent and purpose that the same should be by the said Britton transferred and delivered to another upon, in connection with, and as a result of the sale of goods, wares, and merchandise for cash and as and for the use and purposes in the said contract mentioned, and thereupon the said John Britton, Jr., paid to the said Holtgreve (appellant) for the use and benefit of the said company the sum of $15, the amount specified and stipulated in the said contract to be paid, which said stamps, as the defendant (appellant) well knew and intended the said John Britton, Jr., in accordance with the said contract, and as herein specified, intended to transfer and deliver to customers of the said store making cash payment for goods purchased by them at retail, at the rate of one stamp for each 10 cents cash payment made at the said store, and as a discount for cash payments for the goods so purchased"; that neither of the parties aforesaid paid the tax required by the act to be paid for issuing said stamps or any part thereof; that the "outstanding capital stock of said company is $1,000,000," and the amount carried in reserve by it for the redemption of unredeemed stamps "was about $618,000"; that the company carries on its said business in "about 37 states and was under contract of the same kind as" the one entered into with said Britton "with approximately 30,000 merchants for the use of its co-operative discount system and of its stamps as discount tokens in connection therewith and the redemption thereof"; that it maintained more than 400 "redemption stores" in various states of the Union where it transacted business "and maintained such stores in Salt Lake City and other cities of this state"; that its stores "were stocked with various kinds of merchandise, such as furniture, fabrics, dry goods, jewelry, sporting goods, toys, cut glass, silverware, lamps, chinaware, earthenware, cutlery, musical instruments, clocks, umbrellas, house furnishings, such as kitchen utensils, tableware, blankets, curtains, rugs, linens, and many other articles of household furnishing for personal use"; that the company "carried in stock upwards of 850 different kinds of articles for household and personal use"; that the value of the merchandise carried in stock by the company at its various stores and redemption stations and warehouses was approximately $1,000,000; that the "approximate value of merchandise purchased annually by the company to be exchanged for its S. & H. green trad-

ing stamps issued by merchants to their customers was about $2,784,250," and the "approximate retail value of the merchandise exchanged for trading stamps annually was about $5,000,000"; that the dividends paid to the stockholders of the company in 1915 was 4½ per cent., 1916, 1½ per cent., 1917, 1½ per cent., and none in 1918; that the company received a certificate of authority to transact business in Utah and commenced business in that state on or about the 23d day of January, 1914; that in May, 1915, it had "written contracts with 65 merchants in the state of Utah for the use of its discount system and of its stamps in connection therewith"; that it had paid all the state, county, municipal, franchises, and all other taxes levied against it for all the years it did business in Utah, and had complied with its laws; that its "total receipts in the state of Utah for the period May 1, 1915, to April 30, 1916, were $70,539.96," and its "total disbursements and expenses * * * for the period last mentioned, including the stamp tax under the provisions of the act in question and paid under protest during that period, amounting to $11,196.50, were $75,423.32."

The company's receipts and disbursements are then given for the several years ending in April, 1918, showing progressive decrease of receipts and progressive increase of disbursements, which with the payment of the stamp tax required to be paid under the act, resulted in a deficit in each year. It is further stipulated:

That the company's stores were kept open during business hours for the convenience of the public to inspect the articles kept therein and for the purpose of exchanging such articles for trading stamps. It is also stipulated that the company had entered into written contracts with various merchants who were retail dealers in numerous kinds of merchandise whereby the company had agreed to furnish the merchants with "symbols or tokens in the form of H. & S. green trading stamps to be given to his cash customers in order that they may be identified to the said company * * * and the amount of their cash purchases made known to it"; that the merchant in said written contract "agreed to offer said stamps to all cash customers making purchases, and when accepted gave to his cash customers one of said stamps for each 10 cents" purchase "as a discount for cash and as a means of identifying to said company said cash customers and the amount of their cash purchases, and for redemption by said company only, and not to issue or dispose of said stamps to any other person in any other manner" except as provided in said contract, and the company agreed to redeem said stamps either for cash or for merchandise at the option of the cash customer; that any customer had the right to place all of his stamps in one stamp book, although obtained from different retail

stores, and when he had filled his stamp book containing 990 trading stamps he could present the same at any of the company's stores and at his option obtain articles of merchandise of his selection or cash therefor; that the company furnished said trading stamps to merchants in pads of either 1,000 or 5,000 stamps; that the company distributed "through its merchants" to the customers of said merchants said trading stamp books in which the stamps could be pasted; that "the stamps were treated as a token of cash payments for merchandise, and when presented to the company entitled the holder to demand the cash therefor or to select an article or articles of merchandise"; that the articles aforesaid "represented 2½ to 3½ per cent. discount on purchases at the various stores authorized to use the said system and stamps"; that "because of its large purchases" the company "can furnish trading stamps and trading stamp books to the average merchant cheaper than he can purchase them himself in small quantities for his needs"; that at all times covered by the complaint, "and when the act in question was passed and approved, numerous and various manufacturers and merchants selling different kinds of merchandise in Utah offered in packages or attached to articles sold what is known as premium tokens or tags, and redeemable in premiums of cash or merchandise such as is well known in the selling of merchandise," and that "divers others gave coupons, certificates, or stamps issued by themselves and redeemable by themselves in cash or merchandise," naming a number of merchants who are thus using and delivering tokens, etc., as aforesaid.

A copy of the contract entered into between the company and the retail dealers to whom trading stamps were sold by the company for the purposes aforesaid is attached to the stipulation of facts. We shall not set forth the provisions of that contract, but, if any part is deemed material, we shall refer to it in the course of the opinion.

In view that the case originated in the justice's court and was appealed to the district court, whose decisions, except on the validity of statutes upon which the conviction is based, are final, this court, under the provisions of our Constitution, may not review errors except those which relate to or assail the validity of the act under which appellant was convicted. The validity of that act is assailed upon various grounds by appellant.

We remark that, while we have greatly condensed the statement of facts, yet, in view that the constitutionality of the

act is assailed and the nature and character of the company's business, whom the appellant represented in all the transactions referred to, is in issue, we have deemed it but fair to both parties to set forth the facts with some particularity, and, whenever possible, to state them in the language of the stipulation itself.

Preliminary we desire to state that the statute applies only to such trading stamps as are sold, issued, or transferred by any person, firm, or corporation to another to be used by such other for the purposes stated in the statute. The statute does not apply to cases where the merchant issues his own stamps, tokens, scrip, etc. With these facts in mind, we shall now proceed to consider the contentions of respective counsel.

While the appellant insists that the act in question offends against several of the provisions of both the federal Constitution and the Constitution of this state, all of which provisions are enumerated, yet his principal contentions are: (1) That "the statute is neither a valid revenue nor police regulation"; and (2) that, in view that it permits the use of trading stamps which are furnished and provided by those who issue them, the act for that reason is unreasonably discriminatory and constitutes class legislation, which is prohibited by our Constitution.

Counsel, in their printed briefs have devoted much space and time and have cited numerous decisions which are to the effect that acts which prohibit or unduly interfere with the right to use trading stamps like those described in the stipulation of facts and under the circumstances and for the purpose there set forth are unconstitutional and void as constituting an unreasonable restriction upon the transaction of legitimate business. Among the cases so holding, and upon which appellant relies, are the following: *Denver* v. *Frueauff,* 39 Colo. 20, 88 Pac. 389, 7 L. R. A. (N. S.) 1131, 12 Ann. Cas. 521. The decision in that case is approved and followed in *Denver* v. *United Cigar Stores,* 68 Colo. 363, 189 Pac. 848 and *United Cigar Stores Co. of America* v. *People,* 68 Colo. 546, 190 Pac. 1117. *In re Opinion of the Justices,* 226 Mass. 613, 115 N. E. 978; *People* v. *Gillson,* 109 N. Y. 389,

17 N. E. 343, 4 Am. St. Rep. 465; *People* v. *Dycker*, 72 App. Div. 308, 76 N. Y. Supp. 111; *People* v. *Zimmerman*, 102 App. Div. 103, 92 N. Y. Supp. 497; *Young's Case*, 101 Va. 853, 45 S. E. 327; *State* v. *Dalton*, 22 R. I. 77, 46 Atl. 234, 48 L. R. A. 775, 84 Am. St. Rep. 818; *Ex parte Drexel*, 147 Cal. 763, 82 Pac. 429, 2 L. R. A. (N. S.) 588, 3 Ann. Cas. 878; *Ex parte McKenna*, 126 Cal. 429, 58 Pac. 916; *State* v. *Sperry & Hutchinson Co.*, 110 Minn. 387, 126 N. W. 120, 30 L. R. A. (N. S.) 966; *State* v. *Sperry & Hutchinson Co.*, 94 Neb. 785, 144 N. W. 795, 49 L. R. A. (N. S.) 1123; *State* v. *Dodge*, 76 Vt. 197, 56 Atl. 983, 1 Ann. Cas. 47; and *State* v. *Ramseyer*, 73 N. H. 31, 58 Atl. 958, 6 Ann. Cas. 445.

It is not deemed necessary to cite additional cases in which the decisions are to the same effect. In many of the foregoing cases trading stamps issued by the company, which were precisely like those that are in question here, were the subject of controversy, and the acts there in question were substantially the same as the act in question here. While in some of the foregoing cases the acts did not prohibit the use of all trading stamps, but only those that were not furnished or provided by the merchants issuing them, and hence the question of classification was involved, yet, as before stated, the courts in effect base their decisions upon broader grounds, namely, that the acts in question prohibiting the use of trading stamps were invalid for the reason that they unduly and unreasonably interfered with the guaranteed freedom of transacting lawful business. It would be a needless labor upon our part to attempt a review of the foregoing decisions or to enlarge upon the reasons upon which they are based. It must suffice to say that the facts and circumstances in the foregoing cases, and upon which the decisions are based, are substantially the same as the facts and circumstances in the case at bar. In those cases, as in the one at bar, it was made to appear that there was no misrepresentation, concealment, or deception, or fraud of any kind, practiced upon the public or upon any one obtaining the stamps; nor was there any scheme of lottery or chance involved in the transactions, but the stamps were issued merely as a convenient means of allowing or

granting a discount to the merchants' customers on small as well as on large purchases which were paid for in cash and to identify the purchasers entitled to such discount. From the stipulation of facts in the case at bar, when compared with the stipulations of facts in the cases to which we have referred, it is made to appear, however, that in the case at bar the stamps were sold to the merchants at $3 per thousand, and that a purchaser, after accumulating 990 stamps, had the privilege of receiving the amount of his discount in cash or in some other article or articles of his own choosing the value of which was equal to the discount to which he was entitled, while in the foregoing cases the stamps were sold to the merchants at $5 per thousand, and the merchants' customers were required to select and take some article of merchandise for the discount to which they were entitled. If there is any difference, therefore, it should be held to be in favor of the method pursued in the case at bar, which gives the customer the choice of a cash discount. While in our judgment the great weight of authority is against the validity of laws which either directly or indirectly prohibit or unduly interfere with the right to use trading stamps such as are in question here and which are used for the purposes stipulated, yet, in view that the act in question does not attempt to prohibit or interfere with the use of all trading stamps, but does so only with such as are not furnished or provided by the merchant who issues them, and in view that the contention is made that the act is discriminatory in that it attempts to classify where there is no substantial difference or distinction and is for that reason invalid, we shall confine this decision to that phase of the case.

As before stated, in a number of the cases referred to it is squarely held that a law which permits a merchant who provides his own trading stamps and issues them to his cash customers and who redeems them himself in cash or with articles of merchandise, but, which prohibits the merchant who purchases his trading stamps from another, as from the company in this case, and who authorizes the company to redeem the stamps as before stated, creates an arbitrary and unrea-

sonable classification which cannot be upheld by the courts. Among other cases which so hold are the following: *People* v. *Zimmerman,* supra; *People* v. *Sperry & Hutchinson Co.,* 197 Mich. 532, 164 N. W. 503, L. R. A. 1918A, 797; *Sperry & Hutchinson Co.* v. *State of Indiana,* 188 Ind. 173, 122 N. E. 584. See, also, 6 R. C. L. p. 381, § 374, where the rule respecting classification is stated.

In *People* v. *Sperry & Hutchinson Co.,* supra, the Supreme Court of Michigan, in referring to this discrimination, says:

"So long as the use of trading stamps by dealers to draw customers is countenanced and sustained as a lawful practice, it is difficult to discern any difference, in principle, whether in consummation of the transaction the merchant who negotiates it, and issues to his customers such 'lure to improvidence' under a guaranty of redeemable value, redeems the stamp himself or has some one redeem it for him. As is said in *People ex rel. Madden* v. *Dycker,* supra:

" 'Just what there is in the thing prohibited, differing from the thing expressly authorized, that makes it inimical to public welfare and general safety, does not appear.' "

In *People v. Zimmerman,* supra, quoting from page 111 of 102 App. Div., page 502 of 92 N. Y. Supp. the court says:

"The vice, it seems, is not in alluring one to buy by promise of a gift, but in permitting the promise to be fulfilled by another than the seller. It is a narrow ledge for the distinction to rest upon, when in one instance the transaction is subject to legislative control to the extent of confiscation, while in the other it goes without let or hindrance. If the seller, by arrangement with a responsible company, secures the performance of the agreement, and the arrangement is satisfactory to the buyer, it would seem that such a plan ought not to be made a crime, while redemption by the merchant is deemed an honest transaction. The statute is not founded on the moral plane pretended, but belongs to that class of legislation designed to drive out of business a successful competitor."

As pointed out by the New York court, the distinction that is sought to be made by the New York law is based upon very narrow ground. The ground upon which a distinction is claimed for the Utah law is, however, narrower still. Under our law only such stamps are taxed as are purchased from another and which are to be used for the purpose stated in the statute, while under the New York law the question of redemption was also involved.

The Legislature of Indiana passed an act with respect to the regulation of trading stamps which in effect is like the one the Legislature of this state has adopted. The validity of the Indiana act (Laws 1915, c. 184) was assailed in the courts. In the case of *Sperry & Hutchinson Co. v. State,* 188 Ind. 173, 122 N. E. 584, the Supreme Court of Indiana, while upholding the right of the Legislature to regulate the use of trading stamps nevertheless held that an act which directly prohibits a merchant, or does so, indirectly, by imposing a prohibitory tax against using trading stamps, that he obtains from another with whom he has entered into a contract, to redeem the stamps issued by the merchant to his customers by paying to the customers either in cash or in articles of merchandise the amount of their discount represented by the stamps, while it permits all merchants to use and redeem the trading stamps issued by them to their customers as evidence of the discounts allowed to them, is invalid as being unreasonably discriminatory. After commenting on the method respecting the transaction by the merchant who redeems the stamps issued by him as compared with the transaction where the merchant purchases his stamps from another who also redeems them, the court says:

"Considering the classification made in the light of the avowed purpose and object of the act, it is difficult to assume a state of facts which afford a reasonable ground upon which to base a distinction between the classes formed by the act. Let us suppose that two corporations are engaged in the business under discussion, one of which is organized for the purpose of conducting such business and of making the reduction contemplated with money or with articles of merchandise acquired by purchase, while the other corporation is organized for the purpose of manufacturing, and it makes the redemption in articles which are the product of its own manufacture. If the supposed business of each be considered from the standpoint of the effect on the public morals and general welfare of society, can it be said for any conceivable reason or under any supposable state of facts that the business conducted by the former is more deleterious in its effects on society than that conducted by the latter? The classification adopted must rest on some reason which inheres in the subject-matter with which the legislation deals. The reason must be substantial, and not merely artificial. *Bedford Quarries Co.* v. *Bough,* supra. The court can con-

ceive of no reason upon which the classification adopted in the act can be sustained. Certainly no reason can be suggested resting on any consideration of public morals or general public welfare, and reasons based on any other consideration would be without force.

"For the reasons stated, the statute on which the affidavit was based is void. The judgment is reversed, and the trial court is instructed to sustain appellant's motion to quash the affidavit."

This court is committed to the same doctrine with respect to the question of classification of legislative subjects. See *Board of Education, etc.,* v. *Hunter,* 48 Utah, 373, 159 Pac. 1019. As pointed out in that case, our statute requires that all laws shall operate uniformly wherever uniform **2** laws can be enacted. While it is true that this court, in common with others, has repeatedly held that legislative subjects may be classified and that legislative classification should not be interfered with by the courts unless such classification is clearly fanciful, capricious, arbitrary, or unnatural, yet, where such is the case, it becomes the duty of the courts to uphold the constitutional rights and privileges in that regard. If, now, we apply the doctrine of classification to the stipulated facts in this case, how can it reasonably be contended that there is a basis for classification in the use of trading stamps between a merchant who furnishes, uses, and redeems his own stamps and the merchant engaged in the same business who obtains his trading stamps from another who has agreed to redeem them upon the order of the latter merchant? The only difference between the transactions is that the merchant first named redeems the stamps issued by him by delivering to his customers the agreed value thereof as a discount for cash purchases, while the merchant last named enters into an agreement with another that such other shall redeem the stamps upon his order by paying the customer the agreed cash value thereof or by delivering to him some article or articles of merchandise of his own choosing which is of the value represented by the stamps. In either case the legal and moral effect of the transaction is precisely the same. In both cases the customer receives the discount that the merchant agreed to allow him for cash purchases, nothing more, nothing less. There is, therefore, no basis for

a distinction or classification, but the classification, if one be made, is purely fanciful, capricious, and artificial. As pointed out, however, under our statute the basis for a classification is still more visionary, in that the statute taxes those stamps only which are purchased from another and which are used as stated in the statute.

Counsel for the state, however, insist that the classification is a proper one and that it has been so held by the courts. In support of their contention they cite and rely on the decisions in the cases of *Rast* v. *Van Deman & Lewis,* 240 U. S. 342, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455, *Tanner* v. *Little,* 240 U. S. 369, 36 Sup. Ct. 379, 60 L. Ed. 691, *Pitney* v. *State of Washington,* 240 U. S. 387, 36 Sup. Ct. 385, 60 L. Ed. 703, and *State* v. *Wilson,* 101 Kan. 789, 168 Pac. 679. In two of the three cases cited from the United States Supreme Court the question respecting the regulation of what is called the "premium system" was involved, and the court took great pains to distinguish the premium system, so called, from the use of trading stamps as described in the stipulation of facts in this case. In the course of the opinion in the case of *Rast* v. *Van Deman & Lewis,* supra, the court said:

"We are careful, by much repetition, to show the difference between the cases, to distinguish between the premium systems, and to show, as urged by counsel, that this case is not concerned with a license tax upon a trading stamp business pure and simple; a license upon companies engaged in such business being provided by another section of the statute.

"It is well here to observe, to avoid misunderstanding, that the redemption in the first scheme is 'sometimes by the payment of cash or allowance of credit on account of purchases or for or on account of a certain amount having been purchased of the merchant by the customer.' We are not concerned with a statute directed solely at such method of redemption or a business so confined."

The court thus makes a clear distinction between the principle involved in the Rast Case and the one involved here. It must suffice to say that the decision in the Tanner Case, which is cited in connection with the Rast Case merely follows the decision in the latter case.

The case of *Pitney* v. *State of Washington,* supra, was

taken by writ of error from the Supreme Court of Washington (see 79 Wash. 608, 140 Pac. 918) to the Supreme Court of the United States. The Legislature of Washington had passed an act forbidding the use of trading stamps of all kinds and of "coupons, tickets, certificates, cards or other similar devices" when used in connection with the sale of goods, wares, and merchandise unless a license fee of $6,000 per annum was paid by the licensee, the amount of which fee was in effect prohibitive. The Supreme Court of Washington held the act valid, and the Supreme Court of the United States merely affirmed the judgment of the Supreme Court of Washington. It will be observed that the question of discrimination, as it arises in this case, was not raised in the Washington case. That case, therefore, is not decisive of the question involved in this case and requires no further consideration.

It must be conceded, however, that in the decision of *State* v. *Wilson,* supra, the Supreme Court of Kansas holds that the Legislature is authorized to classify the use of trading stamps so as to prohibit the use of the company's trading stamps while permitting the use of all stamps that are issued and redeemed by the merchants issuing them. The decision is, however, contrary to practically every other decision upon the subject, and does not commend itself to our judgment. If that decision be followed to its logical conclusion, then there would be, there could be, no difference or distinction, however trivial, that would not be a sufficient basis for legislative classification. Under such a holding the constitutional provision requiring that all laws shall be given uniform operation whenever possible would be completely ignored by the courts, and the Legislature might disregard it with impunity. While it is the duty of this court to exercise the greatest caution so as not to interfere with the rights of the Legislature in passing laws, yet we must also be ever mindful of the obligation that we have assumed to obey and to defend the Constitution. In meeting the obligation imposed upon us in that regard, it is just as much our duty to prevent others from violating the Constitution as it is that we shall not do so. While it is en-

tirely within the province of the Legislature to regulate commerce, traffic, trade, and business, in so far as such regulation may be necessary for the protection and welfare of the community, it is nevertheless the duty of the courts to protect and safeguard the rights of the individual whenever such rights are invaded from whatever source. Liberty in conducting one's own affairs in his own way where no rights of another or those of the community are invaded is just as essential as is the liberty of movement and thought. The right of transacting business should therefore be interfered with only in cases of necessity, and when the transactions do, or tend to, militate against the welfare of the community. If, however, business requires regulation, no exceptions should be made except such as are based upon reasonable and proper distinctions. If, therefore, the use of trading stamps is inimical to the public welfare, then all trading stamps that are being used for the same purpose and to accomplish the same ends should be regulated or prohibited. The law should treat all transactions alike, regardless of the form such transactions may take, provided the form of the transaction does not essentially change results.

We are forced to the conclusion, therefore, that the act in question is clearly and palpably discriminatory in that it attempts to make a classification not authorized by our Constitution, and for that reason cannot be upheld.

The judgment is therefore reversed, and the cause is remanded to the district court of Salt Lake county, with directions to enter judgment dismissing the complaint and discharging the defendant.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.