321 So.2d 501 (1975)
The SOUTHLAND CORPORATION
v.
The COLLECTOR OF REVENUE FOR the State of LOUISIANA.
No. 56280.
Supreme Court of Louisiana.
November 3, 1975.
*502 Edwin M. Callaway, Baton Rouge, for defendant-appellant.
John S. Thibaut, Jr., Thibaut & Thibaut, Baton Rouge, for plaintiff-appellee.
SUMMERS, Justice.
Petitioner, the Southland Corporation, is a foreign corporation domiciled in Texas but authorized to do business in Louisiana, where it owns and operates numerous retail stores under the name of Pak-A-Sak/Seven Eleven. Southland is a Louisiana licensed dealer in tobacco products. This action is against the Louisiana Collector of Revenue and challenges the application to Southland of that portion of Section 842(5) of Title 47 of the Revised Statutes, as amended by Act 414 of 1974, referred to as the "grandfather clause". Southland's contention is that the Collector's application of the act constitutes a denial of Equal Protection under the Fourteenth Amendment, and, further creates an undue burden on Interstate commerce. Southland prayed for a declaratory judgment holding the statute as thus amended to be unconstitutional, and for injunctive relief.
The Louisiana Tobacco Tax Law is to be found in Sections 841-869 of Title 47 of the Revised Statutes. It has two general purposes: the imposition of a tax upon the sale and distribution of tobacco products, and the regulation of those persons who engage in the sale and distribution of such products so as to insure collection of the tax. Prior to the amendment, Section 842(5) of Title 47 defined a "wholesale dealer" as "those dealers who shall sell any cigars, cigarettes or smoking tobacco to licensed retail dealers for the purpose of resale."
In Section 843 of this title, the Collector was permitted to enter into reciprocal agreements with tax authorities of border states, whereunder wholesale dealers in those states serving a trade area of retail dealers in this State were permitted to purchase Louisiana stamps with benefit of discount (6%) where border states permitted Louisiana dealers similarly situated to purchase such stamps with benefit of discount.
*503 Prior to the construction of its large distribution center in Texas, Southland expanded the warehouse in its plant to a scale sufficiently large to accommodate the storage, handling, and stamping of tobacco products intended for sale in Louisiana. This action was taken in reliance on assurances from officials in the Collector's office that because of the reciprocal agreement provisions it would qualify as a "wholesale dealer" under Section 842(5). It was, thereafter, in April of 1973, issued a wholesale dealer's license, which was renewed in 1974.
The legislature of 1974, amending Section 842(5) by its Act 414, changed the definition of a "wholesale dealer" by providing, in what is termed a "grandfather clause," that "wholesale dealers shall include. . . those Louisiana dealers who were affixing cigarette and tobacco stamps within the state as of January 1, 1974." (emphasis added). The reciprocal agreement authorization in Section 843 was also amended to reflect this restriction by providing that the reciprocal agreement authorization applied only to those dealers meeting the requirements of a wholesale dealer as set forth in 842(5).
When petitioner inquired about the effect of this amending provision on renewal of its license, the Collector ruled its effect was to disqualify Southland. Consequently, its license would not be renewed in 1975, making it impossible for plaintiff to secure revenue stamps at the six percent discount accorded such dealers. This suit followed.
In attacking the constitutionality of Act 414, plaintiff contends the legislature created thereby a subclassification of wholesale dealers which arbitrarily, capriciously, and without rational basis excluded others from qualifying. Differentiating between those individuals affixing stamps outside the state on January 1, 1974 and those affixing stamps within the state on January 1, 1974 for the purpose of determining who could continue to be qualified as a wholesale dealer is without any rational basis and is violative of Southland's constitutional rights under the Fourteenth Amendment. In addition to the contention that the classification is without rational basis, this is said to be a restrictive classification having no relation to the object of the statute as stated in its title: "to change the definition of wholesale dealer."
Southland also argued the act had the effect of not only depriving the corporation of its Louisiana wholesale dealer's license, but also of preventing it from engaging in the retail sale of tobacco in Louisiana since it will be unable to compete successfully on this level, with resulting loss of the capital invested in the processing, stamping, and distribution of tobacco products intended for sale here.
The State's answer constituted a general denial.
The trial court finding plaintiff failed to overcome the well-recognized presumption in favor of the validity of the statute, held it to be constitutional. However, on rehearing, and predicated on the decision in Dukes v. City of New Orleans, 501 F.2d 706 (5th Cir. 1974),[1] the trial judge found the "unusual" "grandfather clause" in the act "creates a classification bearing no fair and substantial relationship to the object of the legislation and establishes a closed class of favored enterprises, thus depriving Southland of equal protection of the laws." The court also granted the injunctive relief sought, but, because of the severability provision in Section 4 of Act 414 of 1974, all unobjectionable matter was held to be retained and to remain in operation. The State has appealed.
In this court the Collector contends the 1974 act was deemed by the legislature to be a reasonable exercise of its authority in tax matters and must be upheld under the *504 well-established presumption of constitutionality because it bears a rational relationship to a legitimate governmental interest i.e., control of the method of supervising the distribution and application of tax stamps.
In brief it is argued that the discrimination in treatment between Southland and those Louisiana wholesale dealers who were affixing stamps within the State on January 1, 1974, does not infringe equal protection guarantees since it is rationally aligned with the State's desire to protect and preserve the integrity and efficiency of its revenue system. In addition, the Collector answers that Southland's disadvantaged economic situation cannot be considered in determining whether Section 842(5), as amended, is unconstitutional inasmuch as the Fourteenth Amendment shelters only personal rights. The Collector cites this authority to support his contention:
"The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. Harper v. Virginia Board of Elections, 383 U.S. 663, 666, 16 L.Ed.2d 169, 86 S. Ct. 1079. Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).
The constitutional safeguard of equal protection must rest on a real difference. It is only offended if the classification rests on grounds wholly irrelevant to the achievement of valid state objectives. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1973). Where they are founded on no real distinctions in the subject classified and are clearly fanciful, capricious, arbitrary, or unnatural, they will be invalidated. State v. Holtgreve, 58 Utah 563, 200 P. 894 (1921); 16 Am.Jur.2d, Constitutional Law, 496. Activities in broad, general classes that have been further broken down by licensing legislation into subclasses are subject to the same test. Morey v. Doud, 354 U.S. 457 (1957); 51 Am.Jur.2d, Licenses and Permits, ¶ 27-30.
The question presented for our consideration, therefore, is whether the date of affixing tobacco stamps and the place of affixing them was necessary and essential to a determination of which Louisiana "wholesale dealers" were to be automatically qualified under the "grandfather clause" of Section 842(5) as amended by Act 414 of 1974. In other words, was the place of affixing the stamps on a given date essential to achieve the State's proclaimed objective of preserving the integrity and efficiency of the revenue system, and so rationally aligned with the State's desire to keep "wholesale dealers" within tight control that it meets the constitutional test under the Equal Protection Clause.
To sustain its position, the State argues that the integrity and efficiency of the revenue system may be impeded by allowing out-of-state tobacco merchants to obtain stamps, because the "out-of-state location effectively removes the merchant from the direct supervisory and police powers" of the State. Yet, the reciprocity provision of the same statute permits just this, and the State concedes that at a future date a Louisiana dealer might move out of the State and still, through reciprocity, receive Louisiana stamps and affix them in the foreign state.
In an effort to justify this difference the State contends it is because of prior "instate experiences" with the dealer that the Collector can be assured the merchant would properly follow the State's revenue schemes. However, there is no contention that Southland's previous out-of-state location *505 and the affixing of stamps there has to date impeded the integrity and efficiency of the revenue system. No showing is made that both the in-state and out-of-state experience with Southland has been other than satisfactory, that it has not at all times properly followed Louisiana's revenue scheme under the law, or that the corporation has not, heretofore, been under the Collector's "tight control."
Instead, the testimony in the record, not contradicted by the State, clearly establishes that the State, in auditing Southland's operations, which were computerized, received the company's full cooperation. Southland's handling and affixing of these stamps in Texas was done expeditiously and efficiently, the records and returns always being accurate. The employee within the revenue department auditing Southland's records on the Texas premises, testified this presented no difficulties; that the stamping and accounting procedures were reviewed and the State was satisfied "that security measures were adequately enforced."
It is obvious, therefore, that the affixing of the stamps on any given date within Louisiana by its wholesale dealer is not essential to the achievement of the State's asserted objective of preserving and protecting the integrity and efficiency of its revenue system. Consequently, the inclusion of these requirements within the amended definition for purposes of determining which of the Louisiana "wholesale dealers" would be automatically qualified under this clause was arbitrary and capricious.
It should be pointed out that the clause in Act 414 of 1974 differs from the usual "grandfather clause" in licensing statutes. Clauses of this kind are adopted to recognize and continue in force as a matter of right service performed on the effective date of the act; that is, to extend certain prerogatives to persons and entities theretofore established in the profession, occupation, or business being regulated, those seeking to qualify at a future date being relegated to the statute's main provisions. See State ex rel Krausmann v. Streeter, 226 Minn. 458, 33 N.W.2d 56 (1948); 51 Am.Jur.2d, Licenses and Permits, ¶ 36; 4 A.L.R.2d 667, including the supplement thereto. Such a clause is often inserted in licensing legislation that is concerned with the regulation of a particular activity under the view that persons who have properly carried on the activity for some time, or who are engaged therein as of a specified date, may be presumed to have the qualifications that are needed for carrying on the activity.
The "grandfather clause" in the 1974 statute has the unusual effect of disqualifying a previously qualified holder of a Louisiana wholesale dealer's license. Its apparent purpose is to eliminate Southland as a competitor in the wholesale tobacco field in this state. Such an arbitrary discrimination is violative of the shelter guaranteed by the Equal Protection Clause.
In reaching this conclusion this unusual discriminatory provision has received the careful consideration under the facts and circumstances alluded to with approval in Morey v. Doud, 354 U.S. 457, 466, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957), although not the strict judicial scrutiny required where legislative judgments interfere with such fundamental constitutional civil and political rights as race, sex, voter qualifications and the like. Where this strict scrutiny is required, a state's system is not entitled to the usual presumption of validity, the state rather than the complainant must carry a heavy burden of justification, the state must demonstrate its system has been structured with precision, and is tailored narrowly to serve legitimate objectives, and that it has selected the less drastic means for effectuating its objectives. See Fronturo v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d *506 225 (1971); Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L. Ed.2d 583 (1969); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).
This conclusion makes it unnecessary to consider the Collector's answer to Southland's complaint of economic disadvantage.
For the reasons assigned, the judgment appealed from is affirmed.
NOTES
[1] An appeal has been granted by the United States Supreme Court in this case.