## Sperry & Hutchinson Company, Appellant, v. Siegel, Cooper & Company, Appellee.

### Gen. No. 27,168.

1. TRADING STAMPS—*as representative of property right.* Trading stamps issued by a retail mercantile establishment and redeemable in merchandise or cash are not mere gratuities but represent a property right of a definite pecuniary value, which has been bought and paid for by the customer collecting them.

2. TRADING STAMPS—*option of issuer to redeem in money or merchandise.* A mercantile establishment which issues trading stamps to its customers redeemable in merchandise or cash has the option of redeeming the stamps either for merchandise or cash.

3. TRADING STAMPS—*retirement of issuer from business as election to redeem in cash.* Where a mercantile establishment issued trading stamps redeemable in merchandise or money, its retirement from active business had the effect of an election to redeem the stamps in cash.

4. TRADING STAMPS—*non-negotiability.* Trading stamps issued by a mercantile company to its customers and providing for the payment of money but not stating upon their face to whom the money is payable are not negotiable instruments.

5. TRADING STAMPS—*anticipatory breach of contract by announcement of refusal to redeem.* ˏA declaration by a mercantile establishment, which had issued trading stamps to customers that it would make no redemption of such stamps after a certain date, constituted an anticipatory breach of the contract which ended the contractual relations existing between it and the original stamp holders.

6. ˏTRADING STAMPS—*possession of nontransferable stamps as giv-*

*ing right of action thereon.* A provision printed on trading stamps prohibiting their transfer is valid and mere possession of such stamps confers no right of action thereon.

7. TRADING STAMPS—*right of transferee of nontransferable stamp to recover for breach of agreement to redeem.* The acquisition through an intermediary by a trading stamp company, by means of an exchange of its own trading stamps therefor, of a large number of different trading stamps issued by a mercantile company to its customers and by their terms redeemable only by the original holders, did not give such third party a right of action to recover damages on account of the breach of the contract by the refusal of the mercantile company to redeem its stamps after a certain date.

8. ASSIGNMENTS—*right of defendant in action on nontransferable instrument to deny its assignment.* Section 52 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 52), prohibiting the denial except by verified plea of the assignment of any instrument in writing, whether sealed or not, upon which any action may have been brought, was not applicable to trading stamps which by their express terms are nontransferable.

Appeal from the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed June 27, 1922.

FRANK T. WOLCOTT and NEWMAN, POPPENHUSEN, STERN & JOHNSTON, for appellant; EDWARD R. JOHNSTON and HENRY JACKSON DARBY, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee; HENRY RUSSELL PLATT, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county in favor of defendant, who is appellee here, in an action of assumpsit to recover the amount due by reason of the alleged refusal and failure of defendant to redeem, in accordance with its undertaking, 11,207,439 trading stamps which had previously been issued by defendant to its customers and of which plaintiff claims to be the bona fide owner

by purchase from the prior holders thereof between May 5, 1918, and May 21, 1918. The case was heard by the court without a jury.

The declaration contains twelve counts, in each of which the form of the trading stamp issued by defendant is set forth as follows:

(Front.)

"Siegel, Cooper & Co.
Profit-Sharing Stamps.

Stamps.                                            Stamps.

Siegel, Cooper & Co.

The Big Stores—Chicago's Economy Center.

These stamps are redeemable in 75 departments of 'The Big Store' as follows:  750 stamps in merchandise of value of $1.75 or in cash for $1.25; 1500 stamps in merchandise of value of $3.50 or in cash for $2.50. Subject to conditions on back hereof.  Not redeemable in less amounts.

SIEGEL, COOPER & CO.

No............

(Back.)

THE BIG STORE'S PROFIT-SHARING PLAN.
Not transferable.
Redeemable
only by the person to whom originally issued,
Void
if mutilated or altered.
Chicago's Economy Center.''

By some of these counts plaintiff claims to be entitled to recover the alleged merchandise value of the stamps amounting to $26,150.69, and in others the amount of the recovery claimed is the cash value of the stamps, which is alleged to be $18,679.05.  Plaintiff claims that on May 1, 1918, which was prior to its acquisition of the stamps, defendant violated the contract embodied in said stamps by selling its merchandise to the Boston Store and retiring from business, thereby ren-

dering itself incapable of redeeming in merchandise the stamps when presented by the holders thereof, and consequently liable in damages to said holders on account of said breach; that the contract was further violated by the failure of defendant, after the sale of its merchandise to the Boston Store, to provide any other place or method for enabling holders of stamps to obtain such additional stamps as would entitle them to redemption by the purchase of merchandise or otherwise; and that the defendant had waived and never enforced the provision on the back of said stamps restricting the redemption thereof to the persons to whom the stamps were issued originally. The declaration also alleged demands on August 20, 1918, for the redemption of the stamps held by plaintiff in merchandise or cash and the refusal of defendant to so redeem them. All of the rights claimed by plaintiff are based upon its ownership of the stamps.

Defendant is a corporation which had been engaged in the retail mercantile business in Chicago for many years prior to May 1, 1918, occupying a large store at State, Congress and Van Buren streets. It was a department store where all classes of merchandise were sold and was advertised and known as "The Big Store." On May 1, 1918, defendant closed its store, having sold practically all of its stock of merchandise to the Boston Store under a contract which was offered in evidence. The Boston Store was located on State street about four blocks distant from defendant. Its business was similar to that of defendant. The transaction was a large one, involving approximately $1,300,000. Defendant's store had seventy-five distinct departments, all but nine of which were sold to the Boston Store. For about ten years prior to May 1, 1918, defendant had been issuing to its customers coupons or profit-sharing stamps in the form above set forth. This was done as a means of advertising its business and for the purpose of attracting cus-

544      APPELLATE COURTS OF ILLINOIS.

Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 225 Ill. App. 540.

tomers. Each stamp represented a single unit. There were similar forms of these stamps representing different numbers of units, denominated 2, 3, 4, 5, 10, 20, 30, 40 and 50 units, as the case might be, the number of units in each stamp being designated by a figure in bold face type placed in the upper left-hand and right-hand corners of the stamps. Defendant issued these stamps to its cash customers or to its credit customers, upon the payment of their bills, in the proportion of one unit for each 10 cents paid for merchandise in its store. The stamps were redeemable in accordance with their terms at the following rate: 750 stamps in merchandise of the value of $1.75, or in cash for $1.25; 1,500 stamps in merchandise of the value of $3.50, or in cash for $2.50. It is claimed by defendant that it had the option of determining the method of redemption, whether in cash or by the delivery of merchandise from its store. The record shows that during the entire period of operation the customer was given this right and exercised the choice of receiving either cash or merchandise at the rate stated on the stamps, although defendant had the legal right to exercise this option, if it had seen fit to do so. Where the promise in a contract is in the alternative, the right of election is in the promisor. *Metz v. Albrecht,* 52 Ill. 491; *Standard Distilling Co. v. Consolidated Adjustment Co.,* 157 Ill. App. 215; *Heywood v. Heywood,* 42 Me. 229; *Nashua & L. R. Corporation v. Nutting,* 15 Gray (81 Mass.) 25.

Plaintiff is a New Jersey corporation engaged in the trading stamp business in various localities throughout the country and has done business in Chicago since 1904. It furnishes its own trading stamps to retail dealers in merchandise, who issue them to their customers. These stamps are generally known as "S. & H. Green Trading Stamps" and are delivered by plaintiff to its subscribers. The purchasers thereof, who are retail merchants in different lines, give the

stamps to their customers in certain proportions, based upon the amount of their respective purchases of merchandise, the use being similar to that which defendant made of its trading stamps. After a sufficient amount of the S. & H. Green Trading Stamps have been accumulated by a customer of any of these retail merchants, they are received by plaintiff in exchange for merchandise. Plaintiff keeps in stock a considerable variety of merchandise for the purpose of redeeming its trading stamps. The business is extensive and the record shows that plaintiff takes up or redeems approximately 31,000,000 of its own stamps each month in the City of Chicago alone. The success of plaintiff's business depends upon the sale of its stamps, the volume of which is determined by the extent of the use made of them by retail merchants in dealing with their customers. It is inferred that any increased use of the stamps is advantageous to plaintiff.

We have already referred to a contract between defendant and the Boston Store whereby the latter acquired the merchandise formerly belonging to defendant. Under this contract the Boston Store purchased all of the merchandise in defendant's store except nine departments thereof, which were not included in the transaction, because they were not owned by defendant, but were leased by it to other operators. Under this contract the Boston Store also received all accounts and bills receivable, chattel mortgages and instalment contracts owned by defendant at 90 per cent of their face value. With reference to the outstanding trading stamps issued by defendant to its customers, the contract contained the following provision:

"The purchaser hereby covenants and agrees that it will assume all obligations existing against the vendor by the holders of outstanding 'Siegel, Cooper & Co. Profit-Sharing Stamps' heretofore issued by said vendor. The amount of such outstanding obliga-

546          Appellate Courts of Illinois.

Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 225 Ill. App. 540.

tion as shown upon the books of the vendor, shall be listed, and all books and accounts relating thereto shall be delivered to the purchaser, and the purchaser contracts and agrees that it will redeem such stamps when presented according to the contract evidenced by said stamps.''

Under this contract the Boston Store also acquired from defendant all of its trade names, trade-marks, brands, styles of advertising and cuts pertaining to the merchandise sold, and defendant agreed not to engage personally in the sale of merchandise for a period of nine months from the date of sale. The purchaser took immediate possession of the property transferred and proceeded to advertise its purchase and to offer the merchandise for sale at its own store. Early in May, 1918, it advertised in the public press that it would redeem defendant's trading stamps in any quantity from 10 to 10,000 for any merchandise in the Boston Store. The record shows that pursuant to this undertaking the Boston Store redeemed great numbers of defendant's trading stamps. There is no evidence whatever that it has ever refused to redeem any of said stamps, except those presented by or on behalf of plaintiff herein.

On May 1, 1918, and prior and subsequent thereto, Rothschild & Company also operated a department store in Chicago dealing in substantially the same lines of merchandise as both Siegel, Cooper & Company and the Boston Store, all three of whom were business competitors. It was located at Jackson, State and Van Buren streets, directly opposite defendant's store on State street. Rothschild & Company had been using the S. & H. Green Trading Stamps for many years prior to May 1, 1918, giving them to their cash customers. Each S. & H. Green Trading Stamp represented a 10-cent purchase and a book of 1,000 stamps had a merchandise exchange value of from $2.75 to $3. After Siegel, Cooper & Company made the sale to the Boston Store and retired from business,

plaintiff arranged to furnish Rothschild & Company, S. & H. Green Trading Stamps, which the latter was to use in exchange for defendant's profit-sharing stamps. Accordingly, Rothschild & Company, early in May, advertised in the Chicago press that it would exchange, stamp for stamp, S. & H. Green Trading Stamps for defendant's stamps. This advertisement was designed to bring the former patrons of defendant to the Rothschild store. It was artfully worded and misleading in that it tended to convey the impression that Rothschild & Company was selling merchandise formerly belonging to Siegel, Cooper & Company at the latter's "store closing values." It manifestly was damaging to the interests of both defendant and the Boston Store. The exchange began May 6, 1918, and was accomplished as advertised, Rothschild & Company receiving defendant's trading stamps which are involved in this suit, and in turn delivering them to plaintiff in payment for the S. & H. Green Trading Stamps which it had delivered to its customers in the course of the exchanging process. It was the first transaction of the kind between the parties. It is a fair conclusion that in entering into this arrangement plaintiff was actuated by a desire to increase the circulation and use of its green trading stamps and Rothschild & Company by a desire to acquire some of the patronage which had formerly been given to defendant company. After acquiring defendant's trading stamps in the manner above stated, plaintiff undertook to obtain their redemption by causing different persons to present them for redemption in small quantities from time to time to the Boston Store. Over 800,000 of defendant's stamps were so redeemed by the Boston Store. Thereafter, upon receipt of information that the redemptions were being made for the benefit of plaintiff and that the persons presenting the same were merely agents of plaintiff for that purpose, the Boston Store refused to make further re-

548   Appellate Courts of Illinois.

Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 225 Ill. App. 540.

demptions either in cash or merchandise, relying upon the provision upon the back of the stamps to the effect that the stamps are not transferable and are redeemable only by the person to whom originally issued. Thereupon plaintiff made the demands for the redemption of the stamps mentioned in the declaration and upon the refusal of defendant to comply therewith commenced this action.

With reference to the relation existing between defendant and holders of its stamps as fixed by the terms of the contracts evidenced by the stamps, it is contended by defendant that the stamps were mere gratuities not based upon any recited condition and not under seal, while plaintiff contends that these stamps represent a valuable property right, having been bought and paid for by defendant's customers. The nature of a similar contract was discussed in *Sperry & Hutchinson Co. v. Hertzberg,* 62 N. J. Eq. 264, 60 Atl. 368, and it was there held that the S. & H. Green Trading Stamps, which are of substantially the same character as those involved herein, represent a property right of a definite pecuniary value, which had been bought and paid for by the customer collecting the stamps. The court said: "It is a mistake to regard it as a gratuity." We see no reason why this rule should not apply to defendant's trading stamps. The practice of giving trading stamps to customers buying merchandise at retail constitutes a method of discounting bills in consideration of prompt payment in cash. This is a common practice among merchants advantageous to all concerned. The furnishing of trading stamps is an instrumentality incidental to the transaction of merchandising at retail. *Hewin v. City of Atlanta,* 121 Ga. 723, 67 L. R. A. 795; *Ex parte Hutchinson,* 137 Fed. 949.

It is asserted by plaintiff and conceded by defendant that defendant's profit-sharing stamps were payable on demand; that it was defendant's duty at all times

Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 225 Ill. App. 540.

after issuing these stamps for value to be prepared
to honor them and that defendant could not shift the
obligations incurred by the issuance of its stamps to
the Boston Store without the assent of the lawful
holders of the stamps.    No argument is based by
either party upon the propositions of law held or re-
fused by the trial court, although many of the court's
rulings thereon are alleged by plaintiff to have been
erroneous.   In the last analysis the liability of defend-
ant to plaintiff depends upon the construction given
to the contract evidenced by the stamps and the rights
acquired by plaintiff through its possession and alleged
ownership of these stamps, acquired under the cir-
cumstances above stated.   Plaintiff contends that it is
entitled to recover by reason of the breach of the con-
tract arising when defendant sold its merchandise and
retired from business, thereby rendering it impossible
for it to redeem the stamps in merchandise; that de-
fendant had waived the benefit of the provision
against the transferability of said stamps; that by
closing its doors and discontinuing its business it
elected to pay for the stamps in cash; that by its an-
nouncement that it would make no redemptions in cash
or merchandise after May 1, 1918, there was a renunci-
ation of the contract by defendant; that the right of
the holders of these stamps to collect the debt was a
chose in action, which is transferable by statute; that
when the Sperry & Hutchinson Company received
defendant's profit-sharing stamps from Rothschild &
Company, it became the bona fide holder thereof and
had the right to collect the money due upon the stamps
and that this right was thereby assigned to plaintiff,
even though the stamps themselves were not transfer-
able.

Defendant contends that the stamps were not trans-
ferable and were redeemable only by the persons to
whom they were originally issued; that the Sperry &
Hutchinson Company received the stamps with the

full knowledge of the conditions contained therein to the effect that they were not transferable and were redeemable only when in the hands of the persons to whom originally issued; that there was no default or breach of contract shown by the evidence, which does not disclose that either defendant or the Boston Store has ever refused to redeem defendant's profit-sharing stamps when the same were presented for redemption by the persons to whom they were originally issued, and that plaintiff is not the bona fide owner of the stamps in question.

For the reasons already indicated we are of the opinion that defendant had the right of electing whether it should redeem the stamps in cash or in merchandise. It is obvious that by the sale of all of its merchandise to the Boston Store defendant had rendered itself incapable of redeeming the stamps in merchandise, but this was not necessarily a breach of the contract, as defendant had the option of redeeming in cash if so disposed. Defendant's retirement from active business on May 1, 1918, had the effect of an election by it to redeem the stamps in cash. The evidence further shows that defendant, after May 1, 1918, refused to redeem not only the particular stamps involved in the present case, but that it openly and publicly announced that it would make no redemptions whatever after that date. Upon this state of facts plaintiff claims that it had the right to regard the renunciation by defendant of its contract as a breach thereof, which put an end to the existing contractual relations between the parties, except for the purpose of maintaining an action for the recovery of damages. *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59; *Frost v. Knight,* L. R. 7 Exch. 711; *United Press Ass'n v. National Newspaper Ass'n,* 237 Fed. 547; *Lovell v. St. Louis Mut. Life Ins. Co.,* 111 U. S. 264.

While it is true that the evidence does not show that either defendant or the Boston Store has ever refused to honor these stamps when actually presented by the

original holders thereof, yet the declaration by defendant that it would make no redemptions whatever after May 1, 1918, was clearly an anticipatory breach of the contract, which ended the contractual relations existing between defendant and the original stamp holders. Unless these stamp holders saw fit to apply to the Boston Store for the redemption of their stamps, the only course open to them would have been the bringing of a suit to recover damages for this breach of the contract.

It must be conceded that the stamps in question were not negotiable instruments. They provided for the payment of money but did not state upon their face to whom the money was payable. Where the instrument is silent as to whom it is payable it is not negotiable. *Workman v. Workman*, 168 Ill. App. 627; *Robinson v. Texas Pine Land Ass'n* (Tex. Civ. App.), 40 S. W. 620. The stamps in question having none of the essentials of a negotiable instrument and being payable to purchaser, the mere possession of them by plaintiff raised no presumption that it was entitled to the rights of the persons to whom they were issued. Plaintiff was obligated to show that the stamps had been lawfully acquired. The evidence shows that the stamps in question were received by plaintiff from Rothschild & Company and that Rothschild & Company received them from numerous persons when presented without any inquiry as to the identity of the persons presenting them or as to whether or not they were held by the persons to whom they had been originally issued. It is urged by plaintiff that defendant has waived the nontransferable feature of the contract by the fact that for many years it had been in the habit of redeeming the stamps when presented by anyone making purchases at defendant's store, but the evidence also shows that whenever defendant had reason to suspect that the stamps were being presented by persons other than the original customers who received

Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 225 Ill. App. 540.

them in trade, it was defendant's practice to delay redemption until proper investigation could be made to determine how the holder of the stamps obtained possession of them. Consequently, defendant appears to have been acting in conformity with its regular practice when it declined to honor the stamps after learning that the redemption of them was for the benefit of plaintiff company, which was not the original holder.

While our attention has not been called to any cases in which the nontransferable feature of defendant's profit-sharing stamps ·has been discussed, there are numerous cases in which the same provision of plaintiff's trading stamps has been sustained` and enforced by the courts against persons seeking to traffic therein. *Sperry & Hutchinson Co. v. Louis Weber & Co.,* 161 Fed. 219; *Same v. Mechanics' Clothing Co.,* 135 Fed. 833; *Same v. Same,* 128 Fed. 800, 1015; *Same v. Fenster,* 219 Fed. 755. The general effect of these and other decisions of similar import was to enjoin the use of the stamps for any purpose other than that originally contemplated. The validity of the provision preventing the transfer of the stamps being established and the evidence failing to show any refusal on the part of defendant to redeem the stamps when presented by the persons to whom they were originally issued, we conclude that no breach of its contract on the part of defendant has been proved, other than the anticipatory breach above mentioned. The provision prohibiting the transfer of the stamps being valid, the mere possession of them does not confer any right of action thereon. Plaintiff was attempting to use the stamps for a purpose for which it knew they were not intended, and evidently contemplated obtaining their redemption at the Boston Store through presentation by persons appearing to be original holders.

But it is contended by plaintiff that even if the stamps were not transferable defendant could not

prevent the assignment of a cause of action for damages by reason of its anticipatory breach of the contract to redeem and that the right to collect the money due under the contract may be assigned even though the contract itself cannot be assigned, citing *Pennebaker v. Tomlinson*, 1 Tenn. Ch. 598; *Mellen v. Hamilton Fire Ins. Co.*, 17 N. Y. 609; *Dickson v. City of St. Paul*, 97 Minn. 258, 106 N. W. 1053; *Snyder v. City of New York*, 74 N. Y. App. Div. 421, 77 N. Y. Supp. 637; *Chaffin v. Nichols*, 211 Ill. App. 109, and numerous other cases.    These authorities sustain the general proposition for which plaintiff contends, but we do not regard them as applicable to the present case for the reason that in each of these cases there was an apparent intention, openly expressed, to assign the right to recover money arising under the contract.    Admitting the existence of the breach of the contract, anticipatory or otherwise, as plaintiff contends, the evidence does not show any assignment of any cause of action by the original holders of the stamps to Rothschild & Company or by the latter to plaintiff, nor is there anything in the record from which we are justified in concluding that there was any intention to make such an assignment.    We conclude that the holders of defendant's profit-sharing stamps, who exchanged them through Rothschild & Company for plaintiff's S. & H. Green Trading Stamps, took this action because they deemed it more advantageous to themselves than to present the stamps at the Boston Store for redemption in accordance with its advertised offer.    We are unable to agree with counsel for plaintiff that by the unlawful transfer of the stamps in question plaintiff acquired any right of action to recover damages on account of the refusal of defendant to redeem the stamps except in strict accordance with the provisions of the contract.    The rights of plaintiff in this case must be governed by the terms of the existing contract.    While it has been held in many

instances that the delivery of a note, bond or other written evidence of debt will constitute a valid and sufficient assignment thereof, yet it must be shown in every such case that the delivery was made with an intent to assign. No case is cited showing an oral assignment of an instrument, which by its terms is not negotiable and nontransferable. In the present case it is entirely a matter of inference, not sustained by any proof whatever, that there was any intent on the part of the original holders of the stamps to assign either the stamps or any right of action for damages on account of the breach of the contract embodied therein.

In the eighth count of its declaration plaintiff alleged, in substance, that defendant by reason of its breach of the contract represented by said stamps became liable in damages to the holders of the stamps and that plaintiff, by reason of its purchase of the stamps, became the owner of such claims for damages and causes of action. In other words, plaintiff contends that by its purchase of the stamps, which by their terms were not transferable and could not be purchased except in violation of their express terms, it obtained as assignment of numerous claims for damages existing in favor of the original holders of the stamps. No express or implied assignment of such claims is otherwise alleged and none has been proved. Plaintiff further contends that by virtue of section 52 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 52), defendant cannot be permitted to deny the alleged assignment. This section, in substance, prohibits the denial except by verified plea of the "assignment of any instrument in writing, whether sealed or not, upon which any action may have been brought." The cases cited by plaintiff in support of this argument without exception relate to the assignment of written instruments. The only written instruments involved in the present case are defendant's profit-sharing

stamps, which by their terms are not transferable and therefore cannot be made the subject of assignment. It has not been alleged or proved that there was any assignment of a cause of action, separate and distinct from the lawful ownership of the stamps. No authority has been cited showing the application of this statutory provision to any instrument which by its terms is nontransferable. . We are justified in concluding that plaintiff's claim is based entirely upon the stamps and that a recovery thereon can be had only upon compliance with the conditions embodied therein.

We are of the opinion that the provisions contained in the stamps restricting their transfer and making them redeemable only when presented by the persons to whom they were originally issued is valid; that plaintiff received the stamps with the full knowledge of the existence of such restriction and the legal effect of the same; that there was no intention on the part of the original holders of said stamps to assign any right of action to plaintiff; that no such assignment was made and that in acquiring the stamps under the circumstances above stated, both plaintiff and Rothschild & Company had in contemplation and attempted to make an unauthorized use of the stamps of the same character as that which has been repeatedly enjoined in courts of other jurisdictions at the instance and upon the complaint of plaintiff herein as shown by cases above cited. Under these circumstances, we think that plaintiff is precluded from a recovery and that the judgment of the circuit court was correct.

The judgment of the circuit court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.