Gever, Appellant, *v.* American Stores Co.

Argued November 19, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*George D. Kline* and *S. Walter Foulkrod, Jr.,* for appellant.

*Samuel B. Fortenbaugh, Jr.,* with him *John S. Carnes,* and *Clark, Ladner, Fortenbaugh & Young,* for appellee.

*Bernard G. Segal,* with him *John B. Lister, Jerome J. Shestack,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, December 29, 1956:

Appellant, David Gever, Individually and Trading as Gever's Pharmacy, is one of several plaintiffs who

sought unsuccessfully in the court below to enjoin defendants, American Stores Company, trading as Acme Super Market, and Penn Fruit Company, Inc., from giving trading stamps to their customers in connection with sales of certain trade-marked or branded commodities the minimum retail prices of which had been established by agreements entered into pursuant to the provisions of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266. Section 1 of that Act, as amended by the Act of June 12, 1941, P. L. 128, provides "That no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, . . . the trade-mark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity, except at the price stipulated by the vendor."

"(b) That the buyer of such commodity require upon his resale of such commodity that the purchaser from him agree that such purchaser will not in turn resell except at the price stipulated by the vendor of the buyer. . . ."

Section 2 provides that "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity."

Plaintiffs' complaints in equity asserted that they were engaged in the retail drug business in Philadelphia, and that defendants also were engaged in the retail sale of certain drugs and sundry items including "Dr. West's Toothbrushes," "Anacin tablets," "Mennen's Baby Powder," "Johnson's Band-Aids," "Johnson's Baby Cream," "Phillips' Milk of Magnesia," "Dextri-Maltose No. 1," and "Pepsodent Toothpaste." These were all stated to be trade-marked articles registered in the United States Patent Office, the minimum retail prices of which had been fixed, as authorized by the Fair Trade Act, in written contracts with various retailers in Pennsylvania, including the plaintiffs, to whom these products had been sold by their respective manufacturers or owners. It was alleged that, although defendants sold these commodities to their customers at the minimum prices thus established, they delivered to the purchasers trading stamps, one for each ten cents of the purchase price, redeemable in merchandise of value at designated redemption centers. It was therefore claimed that the actual consideration for such sales was less than the minimum retail prices fixed by the agreements, and, since plaintiffs also sold these articles in their drug stores, they were damaged by such allegedly unfair competition. The two courts below, in which these actions were respectively brought, sustained preliminary objections in the nature of demurrers and dismissed the complaints.

The question is whether the giving of trading stamps violates the Pennsylvania Fair Trade Act in the case of sales of trade-marked or branded commodities the minimum retail prices of which were fixed by agreements entered into in pursuance of the Act. While defendants were not signers of the agreements they are nevertheless bound by the Act, which extends its pro-

tective provisions even to non-signatory retailers, against whom, therefore, enforcements may be had. But in considering the question whether the Act has been violated by defendants there must be borne in mind that the stamps are given to their customers not only with trade-marked articles but, in pursuance of a general business practice of their establishments, with *all* commodities sold by them, and that this is a practice which has existed throughout the entire country for very many years, long antedating all Fair Trade legislation in the various States. It was these and other considerations which led to the decision of this Court in *Bristol-Myers Company v. Lit Brothers, Inc.*, 336 Pa. 81, 6 A. 2d 843, that the giving of trading stamps did not amount to a violation of the Act. The practice was there described at length, namely, that before a customer can receive sufficient stamps to obtain anything of value he must fill a book with them representing the purchase of a stipulated amount of merchandise; the stamps are redeemable, not on the store premises, but only by the Stamp Company, which receives its payment for the stamps from the store. It was pointed out that the only object of the practice was to attract customers and induce them to buy other merchandise to the extent which alone would make the stamps of any value; it was an advertising, not a price-cutting device.

The decision thus rendered controls the present litigation. Appellant seeks to distinguish it on various grounds that are, however, of no legal significance, as, for example, that these defendants have engaged in the practice of giving trading stamps for a shorter length of time than in the *Bristol-Myers Company* case; that the value of the stamps may be greater than in that case; that this appellant is a retailer whereas the plain-

tiff in that case was a manufacturer. But none of these differences would justify a different conclusion than was there reached. The *Bristol-Myers Company* case was decided some 17 years ago and during all that time the Legislature has not seen fit to amend the Act so as to make the issuance of trading stamps with the sale of trade-marked articles a violation of the Act, which is particularly significant in view of the fact that the Legislature *has* several times amended the Act in other particulars, one such amendment being as recent as the Act of May 25, 1956, No. 589. It is thereby clear that the Legislature never intended to outlaw such a normal and long-established practice of general application. The Statutory Construction Act of May 28, 1937, P. L. 1019, §52, provides that "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: . . . (4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language." And it was stated in *Burtt Will,* 353 Pa. 217, 230, 44 A. 2d 670, 676, quoting from *Salvation Army Case,* 349 Pa. 105, 110, 36 A. 2d 479, 481, that "unless amended by the legislature, this Court's construction of an act has the same effect as if written into the body of the statute at the time of its enactment." By way of contrast, Section 807 of the Milk Control Law of April 28, 1937, P. L. 417, was amended (Act of July 24, 1941, P. L. 443) by an insertion barring the use of trading stamps as a method or device whereby milk would be sold at a price less than the applicable minimum price, thus showing that when the Legislature wished to ban trading stamps in connection with the sale of a fixed-price article it indicated

such intention by an express provision to that effect.

Viewed realistically, the giving of trading stamps may be regarded as nothing more than the equivalent of a normal cash discount, which is merely a term of payment and not a price reduction. Indeed, in a sense, the stamps have no value in themselves but acquire it only if the stipulated amount of other purchases is made. They cannot be regarded as cutting prices any more than free delivery service or free parking could be so regarded although these are practices which obviously save money for the customers of stores offering such advantages. Accordingly, the use of trading stamps, pursued as a general business practice by a commercial establishment, does not violate either the letter or the spirit of the Fair Trade Act.

The decrees are affirmed at the cost of appellant.