SAFEWAY STORES, Incorporated, a Foreign Corporation, Plaintiff in Error,

v.

OKLAHOMA RETAIL GROCERS ASSOCIATION, Inc., a Corporation, and Louie J. Speed, Inc., a Corporation, Defendants in Error.

No. 37326.

Supreme Court of Oklahoma.

Dec. 24, 1957.

Rehearing Denied Feb. 11, 1958.

Application for Leave to File Second Petition for Rehearing Denied Feb. 25, 1958.

Embry, Crowe, Tolbert, Boxley & Johnson, V. P. Crowe, John W. Swinford, Oklahoma City, Drummond Wilde, R. J. Van Gemert, Oakland, Cal., of counsel, for plaintiff in error.

Miskovsky & Miskovsky, William J. Holloway, Looney, Watts, Looney & Nichols, Oklahoma City, Samuel M. Lane, New York City, for defendants in error.

JOHNSON, Justice.

This is an action brought by Oklahoma Retail Grocers Association, Inc., a corporation, against Safeway Stores, Incorporated, a foreign corporation, to enjoin it from selling groceries below cost in violation of the Oklahoma Unfair Sales Act, 15 O.S.1951 §§ 598.1–598.11.

The Safeway Company by cross-petition made Louie J. Speed, Inc., a corporation, and other grocers parties defendant. Safeway in its cross-petition asked for injunctive relief against Speed, et al., alleging that they, as its competitors, had violated the Unfair Sales Act.

Safeway in its answer admitted selling groceries below minimum statutory cost, but denied that its advertisement, offer for sale, or sale of the alleged articles, was in violation of the Oklahoma Unfair Sales Act, and alleged that its prices were made in good faith to meet the prices of its competitors who were, on the dates complained of, selling the same articles or products of comparable quality at such prices, or below minimum cost by giving trading stamps in violation of the Unfair Sales Act.

In the trial of the case Speed admitted that it issued single trading stamps to its customers on all purchases of groceries, and on certain days that it issued double stamps, and that sales below the statutory cost were accomplished by use of even the single stamps, but contended that the stamps were in the nature of a cash discount and not violative of the Unfair Sales Act.

The court issued a permanent injunction against Safeway prohibiting it from advertising, offering for sale or selling merchandise below the minimum prices as fixed by the Oklahoma Unfair Sales Act.

As to Speed, the court found that the giving of stamps in accordance with the

trading stamp contract was in the nature of a cash discount and not in violation of the Unfair Sales Act, but made permanent the injunction restraining Speed from issuing or giving double stamps to its customers with purchases of merchandise.

Safeway and the Retail Grocers Association and, by agreement, Speed, were the only parties involved in the trial, and Safeway alone appeals.

Safeway contends that the Unfair Sales Act is violative of certain provisions of the Oklahoma Constitution and the Constitution of the United States. However, the constitutionality of the Unfair Sales Act as amended, after Englebrecht v. Day, 201 Okl. 585, 208 P.2d 538, was upheld in Adwon v. Oklahoma Retail Grocers Association, Inc., 204 Okl. 199, 228 P.2d 376. Therefore, the constitutional questions herein raised, being substantially the same as in the Adwon case, supra, we deem it unnecessary to consider the issue of the constitutionality of the Unfair Sales Act in the instant case.

Many cases from other jurisdictions and authorities have been cited and quoted from by all parties involved in this lawsuit. But a study of them clearly indicates a large variety of statutes, differing materially from ours in concept, if not in purpose, to such an extent that we deem it unnecessary to refer to all such cases herein by citing and considering them.

▮▮▮ We are concerned herein only in the interpretation and application of Oklahoma's Unfair Sales Act as applied to the particular facts in this case. See 15 O.S. 1951 § 598.1 et seq., Laws of 1949, p. 103, § 1 et seq. We must construe and interpret the Unfair Sales Act so as to give it practical meaning and effect within the legislative intent. However, until a proper factual case is presented which requires a clear determination and offers a practical situation in which all the conflicting problems and considerations of the area involved are apparent, this court will refrain from theorizing. This is particularly true in cases involving the field of economic regulation.

The eventual goal of any interpretation must be viewed in the practical situation existing in the field to be regulated.

Safeway contends that it was not and is not amenable to injunctive restraint from admittedly selling merchandise below the statutory cost under the Unfair Sales Act, 15 O.S.1951 § 598.3, because under Sec. 598.7 of the Act it had the right to advertise, offer to sell, or sell merchandise at a price made in good faith to meet the price of a competitor who was selling the same article or products of comparable quality at cost to it as a retailer. It seeks to justify its price cutting action on the ground that when its competitors gave trading stamps, cash register receipts or things of like nature of such value with their sales of merchandise, which in effect reduced the price of their merchandise below minimum cost, that that constituted sales below cost or price cutting in violation of the Unfair Sales Act, and that it had a right to meet such competition by reducing its prices to the extent of the value of the trading stamps.

In other words, Safeway contends that its action was justifiable because of the alleged wrongful acts of its competitors, and that its actions in the premises constituted "good faith" in accord with Sec. 598.7, which exempted it from the injunctive provisions of Sec. 598.5 of the Unfair Sales Act. We do not agree.

▮▮▮ In this connection our attention has been called to the recent case (10–4–57) of State by Clark v. Wolkoff, Minn., 85 N.W. 2d 401, 403, wherein it was held that "(I)f a merchant in good faith sets the price of an article on the basis of a competitor's price, which price he in good faith believes to be a *legal price,* there is no violation," which clearly is not the case herein. In the instant case, Safeway obviously and admittedly did not, in good faith, set the price of its articles which were subject to the Unfair Sales Act on the basis of its competitors' prices, which it in good faith believed to be legal prices under the Unfair Sales Act, but on the contrary it set illegal prices for the sole purpose of meeting prices of its competitors, which it thought to be illegal.

■ In considering unfair sales practice acts from a procedural viewpoint, commentators have observed the wisdom of the legislatures in providing the remedy by injunction, and the increasing tendency of the courts to enjoin, at the suit of competitors, repeated violations affecting the unfair conduct of business. Availability of the injunctive remedy and that of interlocutory decrees based on actions therefor precludes the practice indulged in by many fair minded competitors immediately to meet competition by resorting to the same practices themselves. Since actions for injunctions may be filed by a trade association for the benefit of all its members, the practice of resorting to the same practices to meet competition is materially reduced, for the natural restraint against suing a competitor is less present in the seeking of immediate relief against threatened piratical price wars. 10 So.C.L.Rev. 22. See also 21 Iowa L.Rev. 175, 236; 42 Harv.L.Rev. 693; 13 Tex.L. Rev. 136; and 25 Cal.L.Rev. 1088, and cited cases.

We are of the opinion that this injunction granted by the trial court against Safeway was proper, because under our statute the appropriate remedy was by injunction and not by retaliation or retaliatory action, such as was practiced by Safeway. In this respect the judgment of the trial court is affirmed.

We come now to Safeway's cross-petition and its contention that the trial court erred in refusing to enjoin Speed and restrain him from distributing trading stamps with articles priced at the minimum under the Unfair Sales Act.

Safeway's cross-petition charged that Speed by the use of trading stamps was selling his merchandise below the statutory minimum cost in violation of the Unfair Sales Act.

Speed in his answer to the cross-petition admitted that he was a retail grocer, in competition with Safeway; that for a number of years he had been distributing S & H trading stamps with all merchandise, including those items which were offered for sale at the statutory minimum; that the stamps were worth approximately 2.5 percent of the sales price of the merchandise, but did not reduce the sales price because they constituted the only practical means of allowing a discount for cash.

Speed defends on the grounds that single trading stamps (the court having enjoined him from issuing double stamps on his sales) do not reduce the price of merchandise, but constitute only a discount for cash on his sales.

In recent years there have been many appellate court decisions dealing with the subject of trading stamps, and several Law Review articles have been written concerning them and their legal effect upon economic regulatory measures. See cited authorities supra and infra.

An extensive article appears in 105 Pa.L. Rev. 242, et seq. entitled "Trading Stamps: A Challenge to Regulation of Price Control" wherein in referring to trading stamps it is said: (quoting from Wall St. Journal, April 23, 1956, p. 1, col. 6.) "Assailed by some 'as a costly device that raises family food bills' and hotly defended by others as 'a perfectly legal promotional tool,' trading stamps have become a center of controversy in the merchandising field. Though stamp plans have enjoyed a rapid upsurge in growth since World War II, the idea itself is over fifty years old." (See 24 Tenn.L. Rev. 557–58, 1956).

Descriptions of the various stamp plans may be found in 24 Tenn.L.Rev., supra. However, there being no statute in Oklahoma prohibiting the use of trading stamps as such, we are concerned herein only with the application of and/or relation of trading stamps to unfair competition and below cost sales under our statute; see "The Unfair Sales Act," Laws 1949, p. 103, § 1 et seq.; 15 O.S.1951 § 598.1 et seq., which as noted by the title of the Act, is designated as "An Act defining and prohibiting unfair sales practices with a view to preventing the advertising, offering for sale or the selling of merchandise below cost for the purpose of injuring competitors,

destroying, or substantially lessening competition; providing remedies for violation thereof; establishing a penalty therefor; * * *."

The question of whether giving trading stamps in the usual manner with merchandise sold at the statutory minimum constitutes a disguised form of price cutting in violation of our Unfair Sales Act, or whether they (trading stamps) are to be regarded as a discount for cash, as a means of advertising, a device to entice customers and to retain their trade, is new in this jurisdiction, and our decision on this matter will be one of first impression. It is a question upon which appellate courts, economists and accountants have diverse and conflicting opinions.

The question has, however, been considered by the courts of California and Utah, which states have statutes similar and comparable to ours in content and substantially identical to ours in purpose on unfair trade practices and fair trade contracts. See Cal.Bus. & Prof.Code, Fair Trade Contracts, Secs. 16900–16905, Unfair Trade Practices, §§ 17000–17100, and Food and Grocery Bureau v. Garfield, 20 Cal.2d 228, 125 P.2d 3; Weco Products Co. v. Mid-City Cut Rate Drug Stores, 55 Cal.2d 684, 131 P. 2d 856, and cited cases. See also the Utah case, Trade Commission v. Bush, Utah 1953, 259 P.2d 304, and cited cases, and Utah statute cited in footnote of the case.

In the case of Food and Grocery Bureau v. Garfield, supra, there was no contention as herein that the use of the stamps resulted in sales of commodities below cost under the Unfair Sales Practices Act, but it was said in that case that "(I)t is well settled by the decisions of this court, as well as other jurisdictions, that the practice of merchants in issuing trading stamps with the purchase of articles is merely a method of discounting bills in consideration for the immediate payment of cash." [20 Cal.2d 228, 125 P.2d 6.] Citing cases.

In the California case of Weco Products Co. v. Mid-City Cut Rate Drug Stores, supra, the question of price cutting or selling below cost was involved, and the factual situation was similar, if not identical, to the case herein, except that the latter case involved the Fair Trade Act and the case before us involves the Unfair Sales Practices Act which was true of the California case of Food and Grocery Bureau v. Garfield, supra, but the court made no distinction in the application of the cash discount rule to the Fair Trade and Unfair Sales Practices Acts. In the Weco Products Co. case, supra, it was said: [55 Cal.2d 684, 131 P.2d 858.]

"Defendant, even antedating plaintiff's availing itself of the protection of the Fair Trade Act, regularly gave to his customers trading stamps at the rate of one stamp with each ten cents of the sale price of articles purchased. These were given on purchases of any of the thousand and one things sold in defendant's drug stores, with the exception of liquors. At infrequent intervals there were 'double stamp days,' when two stamps were given for each ten cents of sale price. Upon each stamp was imprinted 'Cash Discount Stamp.' Each stamp had a cash value of two mills. Stamps were given to every customer paying cash at the time of purchase and requesting trading stamps. They were redeemed by defendant upon presentation of five hundred stamps collected in a book given by defendant to customers for that purpose, redemption value for a book of five hundred being $1.00 cash or, at the option of the purchaser, $1.25 merchandise.

"Inasmuch as trading stamps were given by defendant upon sales of plaintiff's commodities, plaintiff contends that the scheduled minimum prices of his commodities were reduced by exactly the amount of the cash value of the stamps, to wit, by two mills upon each ten cents. In other words, plaintiff insists that the giving of trading stamps was in reality a disguised form of price cutting.

"The question before us for consideration, therefore, may be stated

as follows: Does the giving of trading stamps, redeemable for cash or merchandise, constitute a violation of the Fair Trade Act when such stamps are given with commodities sold at the minimum prices stipulated by the producer under said act? This query is best answered, we believe, by a consideration of the nature and purpose of the trading stamp coupons. Are they to be regarded as a discount for cash, as a means of advertising, a device to entice customers and to retain their trade, or do they simply represent a cut in the sale price of the articles with which they are given? If the latter, they accomplish a cut in the established price of merchandise; and where such merchandise is sold at minimum Fair Trade Act prices, the giving of trading stamps then amounts to a sale below such prices.

"If, however, the stamps are given by the merchant in the nature of an inducement to customers to attract them to his store, the practice is in the nature of an advertising device, and is no more to be condemned as violative of the Fair Trade Act than would be such commonly employed devices as free parking room, care of infants and other plans offered by some mercantile establishments in competition with their rivals. Free parking for automobiles of customers might be said to result in a lesser price paid by a customer for goods purchased, yet it could hardly be reasonably contended that thereby a violation of the Fair Trade Act had been worked.

"Neither can it be asserted that by giving discounts for cash the terms of the statute in question are contravened. A cash discount is a reward for prompt payment. It is a trade practice long established, and is authoritatively recognized as being not a deduction from the purchase price. Montgomery, Auditing Theory and Practice, pp. 499–500.

"*Consideration of such authorities as are available leads us to the conclusion that the giving of trading stamps as in the instance now before us does not effect a reduction in the price of the articles sold such as to constitute a violation of the Fair Trade Act.* The matter has not been passed upon by the appellate courts of this state. *However, aside from the consideration of the Fair Trade Act, the status of trading stamps is definitely fixed in this state as being a discount for 'the immediate payment of cash.'* This pronouncement finds its latest expression in the case of Food and Grocery Bureau v. Garfield, 20 Cal.2d 228, 125 P.2d 3, 5, decided April 28, 1942, where the defendant is the same as in the instant case, and where the very trading stamps here involved were under consideration. *It is true that the Food and Grocery Bureau case involved a different statute, the Unfair Practices Act rather than the Fair Trade Act, but the ruling of the court must be regarded as conclusive of the status of the trading stamp in commercial retail business.*

" '*It must be concluded,*' says the court in the Unfair Practices Act case, '*that the trading stamp plan adopted by the appellant * * * is a discount given the customer in consideration of his paying cash.*' And at page 6 of 125 P.2d: '*It is well settled by the decisions of this court, as well as those in other jurisdictions, that the practice of merchants in issuing trading stamps with the purchase of articles is merely a method of discounting bills in consideration for the immediate payment of cash.*'

"This latter pronouncement is buttressed by numerous citations to decisions in California and other jurisdictions, where trading stamps are characterized as 'merely one way of discounting bills in consideration for immediate payment in cash,' Ex parte Hutchinson, C.C., 137 F. 950, 951; 'a

benefit to the customer, who practically receives a discount, and who will buy more cautiously and judiciously if he pays cash,' Winston v. Beeson, 135 N.C. 271, 47 S.E. 457, 461, 65 L.R.A. 167, and 'a convenient means of allowing or granting a discount to the merchants' customers on small as well as on large purchases which were paid for in cash,' State v. Holtgreve, 58 Utah 563, 200 P. 894, 897, 26 A.L.R. 696.

"To denominate appellant's trading stamp plan as a device for giving a discount for cash payment on merchandise, rather than as a cut in price upon the articles sold, gains force when we consider that the stamps are given uniformly and without regard to the type of goods sold or the purchaser of the same. The only condition is that cash be paid for the purchases. Respondent's 'Fair Trade' minimum-priced articles are not singled out by appellant as objects to which alone the trading stamp privileges attach. No discrimination is made for or against them. The policy may be said to be of uniform application both as to goods sold and as to purchasers of the same, and logically falls into the classification of 'cash discount' rather than 'price cut.' " (Emphasis ours.)

The California rule as expounded in the above quotation holding that giving of trading stamps with purchases of merchandise sold at the minimum price under the Unfair Sales Practice Act is not a violation of the Act because the stamps represent a "cash discount" which, according to accounting procedure, is a cost of selling rather than a reduction in price, is a rule of long standing. In 105 Pa.L.Rev. 248, in discussing discounting procedures, it was said:

"While in the case of stamps a stronger argument may be made for treatment as a selling cost, since seller receives in cash the full list price regardless of the discount in stamps and must therefore account for the cash income as well as for his payment to the stamp company for the use of the stamps."

As early as 1904 in Ex parte Hutchinson, C.C., 137 F. 949, the Court, in nullifying anti-trading stamp legislation, said:

" * * * (T)he giving of trading stamps is merely one way of discounting bills in consideration for immediate payment in cash, which is a common practice of merchants, and is doubtless a popular method, and advantageous to all concerned, and it is not obnoxious to public policy. * * * "

In the same year (1904) in Winston v. Beeson, 135 N.C. 271, 47 S.E. 457, 461, the court in holding that the issuance of S & H stamps did not constitute a "gift enterprise" said:

"We can discern no practical difference between this arrangement of the parties and one by which the merchant agrees to discount his bills where cash is paid by his customer at the time of the purchase, and the giving of stamps redeemable at a store of another in goods to be selected by the holder, instead of an actual discount by the merchant, does not, in law, vary the case, or change the real and substantial character of the transaction. * * * "

In 1922, in the case of Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 225 Ill. App. 540, affirmed, 1923, 309 Ill. 193, 140 N.E. 864, in 225 Ill. at page 548, the court referred to the practice as follows:

"The practice of giving trading stamps to customers buying merchandise at retail constitutes a method of discounting the bills in consideration of prompt payment in cash. This is a common practice among merchants advantageous to all concerned. * * "

In 1942 the same rule was applied in Food and Grocery Bureau v. Garfield, supra.

In 1951 in Sperry & Hutchinson Co. v. Hudson, 190 Or. 458, 226 P.2d 501, 504, the court said:

"In a practical sense, the issuance of these trading stamps to cash customers is simply a method adopted for giving these purchasers a discount for cash. By the use of these stamps discounts are available on small purchases. As explained by the witness Shirer, vice president of plaintiff corporation: 'There is no coin small enough to give a discount on a ten or fifteen cent purchase.' By the issuance of one of these stamps for each ten cent purchase, such a discount is made possible."

In 1954 in Sperry & Hutchinson v. Margetts, 15 N.J. 203, 104 A.2d 310, 312, the court held that giving trading stamps was a form of discount for cash and "should be treated as a non-operating item, rather than as a deduction from sales price."

And as late as December of 1956, in Gever v. American Stores Co., 387 Pa. 206, 212, 127 A.2d 694, 696, the court said:

"Viewed realistically the giving of trading stamps may be regarded as nothing more than the equivalent of a normal cash discount, which is merely a term of payment and not a price reduction. Indeed, in a sense, the stamps have no value in themselves but acquire it only if the stipulated amount of other purchases is made. They cannot be regarded as cutting prices any more than free delivery service or free parking could be so regarded although these are practices which obviously save money for the customers of stores offering such advantages. Accordingly, the use of trading stamps, pursued as a general business practice by a commercial establishment, does not violate either the letter or the spirit of the Fair Trade Act."

Generally, the law of trade regulations has moved swiftly, and our statutes relating thereto are relatively new; however, from an examination of our statutes and those of other states, together with appellate court decisions construing same,

we conclude that the weight of law, logic and reason clearly and distinctly show that the practice of giving trading stamps in the usual customary manner does not amount to, nor will it sustain, a charge of price cutting.

The trial court did not err in refusing injunctive relief to force Speed, who was giving single trading stamps in the usual manner and in accord with a court order enjoining him from giving double stamps, to price his merchandise at statutory mark-up plus the value of the single stamps issued in the usual manner to the consumers, and we hold that the giving of such stamps did not constitute a price cut or unfair competition, but that such stamps merely constituted a discount for cash.

Therefore the judgment as to Speed is affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON and CARLILE, JJ., concur.

HALLEY, WILLIAMS, ELACKBIRD, and JACKSON, JJ., concur in part and dissent in part.

JACKSON, Justice (concurring in part and dissenting in part).

Sales at retail below cost, as defined in the Act, are prohibited. 15 O.S.1951 § 598.3.

Speed is selling, or giving, two articles for the price of one. Speed does not admit that this constitutes selling below cost nor does the majority opinion specifically so hold. Speed argues, and the majority agrees, that Speed is giving a discount for cash.

The Act does not authorize discounts for cash in retail sales. It does not authorize any scheme or device that would result in sales below "cost to the retailer." We are not dealing herein with sales at wholesale or by the manufacturer wherein discounts for cash appear to be authorized by § 598.2(a) of the Act.

Insofar as material here § 598.2(a) defines "cost to the retailer" in substance as invoice cost, plus freight, plus a 6 percent

markup to cover a part of the cost of doing business.

Speed was selling items at "cost to the retailer" (Speed) but in addition was giving trading stamps to the purchaser. The stamps were valued at 2.5 percent. That is, if a pound of coffee cost Speed $1, as defined in "cost to the retailer", Speed was selling the coffee at $1 and giving the customer a stamp.

Even if it could be said that a cash discount by the retailer is authorized, the foregoing practice does not constitute a discount for cash in the ordinary acceptance or understanding of the term. A "discount for cash" ordinarily connotes a taking away, or reduction. The word "discount" is defined in Webster's New International Dictionary as follows:

> "Discount. 1. To deduct from an account, debt, charge, or the like; to make an abatement of; as, to discount a per cent of a bill for early payment."

In Black's Law Dictionary "Discount" is defined as follows:

> "Discount. In a general sense, an allowance or deduction made from a gross sum on any account whatever."

In Black's Law Dictionary "Cash Discount" is defined as follows:

> "A deduction from billed price which seller allows for payment within a certain time. Leonard v. United States, Ct.Cl., 7 F.Supp. 295, 297."

Speed is not giving a discount for cash but is selling two articles for the price of one. Under the illustration above given Speed is selling a pound of coffee and a stamp for $1 which, together, cost One Dollar and Two and One-Half cents. This is contrary to an express provision of the statute. § 598.2(d) provides in substance that when one or more items are advertised or sold with one or more other items at a combined price, or offered as a gift, or given with the sale of any one or more other items, each of said items shall be deemed to be advertised or sold, and the price of each item named shall be governed by the definition of "cost to the retailer."

We have been furnished extensive briefs citing decisions from other jurisdictions. Most of these decisions seem to be influenced by experts in the field of accounting and auditing. Experts in these fields testified in this case. Reasons which compel an accountant's conclusion do not compel the same legal conclusion. The issues are not the same. Accountants are concerned with auditing principles. We are concerned with the meaning of the Act as intended by the Legislature.

In my opinion the injunction against Safeway was proper. Safeway does not contend that it has a right to sell below cost. It does contend that it had a right to meet Speed's prices. § 598.7 of the Act authorizes a retailer to sell merchandise at a price made in good faith to meet the price of a competitor who is selling the same article at cost to him (competitor). Safeway was taking 2.5 percent from cost. Speed was adding or giving 2.5 percent above cost. But if it could be admitted that Safeway was meeting competition it was meeting unlawful competition. An illegal price on Speed's part would not authorize an illegal price on Safeway's part. This is one of the evils that the Act seeks to prevent.

For the reasons assigned, I respectfully concur in the order enjoining Safeway from selling below statutory cost and dissent to the opinion wherein it authorizes Speed to give stamps on articles sold at statutory cost.

I am authorized to say that HALLEY and BLACKBIRD, JJ., concur in the views herein expressed.