## Galuska v. Value Fair, Inc.

*Eckert, Seamans & Cherin,* for plaintiffs.

*Edward I. Goldberg,* for defendants.

WEIR, J., June 20, 1962.—In this suit in equity, the owners of a retail drug store seek to prevent a rather large discount establishment from continuing to sell well known "health and beauty aids" at prices below the minimums fixed by the manufacturers under the authority of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, as amended, 73 PS §7 et seq. A preliminary injunction was granted which prohibits defendants, Value Fair, Inc., and V. F. Drug Company, Inc., from cutting the fair trade minimum prices on commodities bearing the trademark, brand, or name of a number of producers listed in the complaint, and the immediate issue is whether this injunction should be dissolved or continued in effect pending a full and final hearing of the case. The facts developed from two days of testimony in the preliminary hearing make it obvious that the decision is of very substantial economic consequence to both of these parties, and in the interest of a prompt disposition of the matter we shall not engage in an unnecessary review of these facts. Neither shall we repeat or analyze the multitude of judicial pronouncements in relation to the underlying economic philosophy of the pertinent legislation.

The main argument of defendants which is strenuously advanced is that plaintiffs, Galuska and his partner, have no standing as retailers to invoke the enforcement of the Fair Trade Act. After consideration of the authorities cited on both sides, we are compelled to disagree with this contention for various reasons, of which, however, we shall mention only two.

In the first place, when we put all of the words of the statute together and particularly those of sections 1 and 2, it seems perfectly clear that a retailer is either a "buyer" or "purchaser" who is specifically authorized

to bring suit, and especially so in respect to commodities which he himself contracted to sell at Fair Trade prices. The relevant portion of section 1 of the statute states:

"No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears . . . the trade-mark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity, except at the price stipulated by the vendor.

"(b) That the buyer of such commodity require upon his resale of such commodity that the purchaser from him agree that such purchaser will not in turn resell except at the price stipulated by the vendor of the buyer."

The relevant portion of section 2 of the statute states:

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity . . ."

To this court the meaning of this language is so apparent that the words could be given the opposite meaning only by a tortured construction. Obviously there is little area for discussion about the meaning of fairly simple English sentences since any two literate readers will either promptly agree or will hopelessly

disagree about them. However, when in the mind of a judge, no ambiguity is conceived in the expression of the legislature, no course is legally possible other than to accept the legislative purpose, and to accept it in its entirety. See Sherwood v. Elgart, 383 Pa. 110.

The second reason which we will state for holding that a retailer may bring suit against another retailer under the Act of 1935 is that this was the status of the parties in Gever v. American Stores Co., 387 Pa. 206. It is true that the question was not raised in that case and that a legal issue certainly is not settled by a case in which it is not mentioned. However, the statute with which we are dealing is a very short one and the Supreme Court in its consideration of Gever would necessarily read and re-read all of it. Can we then suppose that no member of the court noticed the language which confers the right to institute enforcement action? Can we suppose that all seven of these astute legal minds, whose daily work sharpens them for such observation, would miss this fundamental point and go on to a needless deliberation on the merits of the case? We do not regard this as a reasonable supposition and we are confident that the justices interpreted the statute as conferring the right of action on retailers against other retailers in proper cases.

A more troublesome argument advanced by defendants for the dissolution of the preliminary injunction is that the manufacturers themselves have ceased to impose minimum retail prices and have waived their rights under the Fair Trade Law. Evidence was directed toward showing that this has occurred through inaction as well as by express or implied acquiescence in retail price cutting. Since defendants concede that advertised minimum prices still exist for the products of these same manufacturers, the inevitable thrust of this argument is that these manufacturers are straddling the economic fence for their own enrichment

without regard for the possible disaster to retailers who are trying to uphold the price structure at the demand of the manufacturers and in part at least for the benefit of the latter. If this were true it would mean that some of these great companies whose names are household words are conducting themselves in a deceitful manner which may bring financial distress or ruin to many small independent druggists. The ethical as well as the legal implications of such conduct would be so serious that we certainly would not accept such a belief without at least hearing from the accused. On the other hand, the extraordinary remedy of a preliminary injunction cannot be based upon mere disbelief. Under the evidence we cannot be sure one way or the other about some of these manufacturers. The evidence which troubles us most is the testimony of plaintiff Galuska who requested contracts from a number of them who did not even afford him the courtesy of an answer, when they certainly would know that the probable reason for his requests was his intention to seek enforcement of fair trade minimum prices. This casts a shadow of doubt on whether they still have exsisting fair trade contracts in Pennsylvania which they can conscientiously assert are genuine and enforceable on their own part. Under the terms and the spirit of this law, fair trade prices cannot be enforced by one retailer against another in a case where the manufacturer itself could not enforce such prices.

As to the products of manufacturers which have entered into fair trade contracts with these plaintiffs or have otherwise asserted their position unequivocally, the preliminary injunction is justified and should be continued and enforced. As to the products of the other manufacturers, the evidence of the existence of fair trade minimum prices is not so clear, concise and indubitable that a preliminary injunction can be supported and it must therefore be dissolved. A final hear-

78

ing should be scheduled as early as possible due to the importance of learning the precise position of the manufacturers as well as the importance of other issues involved herein. At such hearing, by subpoena or otherwise, all of the manufacturers should be compelled to take a definite stand. Until then it would be unfair to assume that they are engaging in the reprehensible and dangerous conduct which some of the present testimony attributes to them.

Thus far, the manufacturers involved in this case who are known to have affirmed their stand in favor of fair trade by direct commitment to plaintiffs are Thomas Leeming & Co., Inc., Pacquin Incorporated, Parke, Davis & Company, The Procter & Gamble Distributing Company, Vick Chemical Company Division of Richardson-Merrell, Inc., White Laboratories, Inc., Bristol-Myers Company, The Gillette Company and John H. Breck, Inc. As stated above, we harbor doubt as to the intentions of the other manufacturers.

Therefore, the preliminary injunction shall be continued with respect to the products of the above named manufacturers, but it shall be dissolved as to the others.